No. 24-1181

---

**United States Court of Appeals
for the Seventh Circuit**

---

Fred L Nance Jr.
      Plaintiff-Appellant

Vs

United States Department of Justice, et, al.
      Defendant-Appellees.

---

Appeal from the United States District Court
Northern District of Illinois, Eastern Division
Case No. 20-CV-06316
The Honorable Judge Jorge L. Alonso
Case No. 22-CV-3861
The Honorable Judge LaShonda

---

BRIEF AND REQUIRED SHORT APPENDIX OF
PLAINTIFF-APPELLANT, FRED L NANCE JR.

/s/Fred L. Nance Jr., Plaintiff-Appellant
Pro se
17239 Evans Avenue
South Holland, Illinois 60473-3436
708-921-1395
frednance@clickservices.org

DocuSigned by:

*Dr. Fred L Nance Jr*
5F33259F36DE4CF...

U.S.C.A. – 7th Circuit
RECEIVED

MAR 15 2024

DocuSign Envelope ID: 3F7AE164-FDBA-45A9-A57F-E9E7FBDE7FD5

**TABLE OF CONTENTS**

**DISCLOSURE STATEMENT**

**TABLE OF AUTHORITIES**

**JURISDICTIONAL STATEMENT**

**STATEMENT OF ISSUES**

**STATEMENT OF THE CASE**

**SUMMARY OF ARGUMENT**

**ARGUMENT**

      **A.  Standard of Review**

**CONCLUSION**

**CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7)**

**FRAP RULE 32(g) and CR 32(c)**

**PROOF OF SERVICE**

**CIRCUIT RULE 30(d) STATEMENT**

**ATTACHED REQUIRED SHORT APPENDIX**

DocuSign Envelope ID: 3F7AE164-FDBA-45A9-A57F-E9E7FBDE7FD5

**DISCLOSURE STATEMENT**

Plaintiff-Appellant is pro se and does not represent a corporation. Plaintiff-Appellant did not bring this case before the District Court or this Appellate Court representing a corporation. Plaintiff-Appellant has brought this case as a private citizen.

# TABLE OF AUTHORITIES

## CASES

Albemarle Paper Co. v. Moody, 422 U.S. 405, 416, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975)......................13

Allgeier v United States, 909 F.2d at 877– 79.........................24

Arizona v. Fulminante,499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)...12

Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)................23

Bracy v. Schomig,286 F.3d 406, 414 (7th Cir. 2002)..................12

Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871)..............14

Brown v. Watters, 599 F.3d 602, 616 (7th Cir.), cert. denied 131 S. Ct. 293 (2010)...12

Clemons v. Board of Education of Hillsboro, 228 F.2d 853, 857-58 (6th Cir. 1956)...13

Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).......................13

Doe v. Country of Lake, Indiana, (N.D.Ind. 1975), 399 F. Supp. 553, 555 (N.D. Ind.1975)......16

Edwards v. Balisok,520 U.S. 641, 647, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997)...12

Ervin v. OS Restaurant Services, Inc., 632 F.3d 971, 976 (7th Cir. 2011)............13

Estelle, 502 U.S. at 75....................12,13

Evans v. United States, 876 F.3d 375, 380 (1st Cir. 2017), cert. denied, 139 S. Ct. 81 (2018)...1

Ex parte Virginia, 100 U.S. 399, 25 L.Ed. 676 (1879)...........................15

Fellhauer v. City of Geneva, 142 Ill. 2d 495, 505 (1991). ¶ 23....24

Franklin,398 F.3d at 960-61.....................................12

Haines v. Kerner, 404 U.S. at 521......................................10,11

Halligan v. Burke, Case No. 17 C 3757 (N.D. Ill. Feb. 12, 2018).............13

Hanover Star Milling Co. v. Allen Wheeler Co., 7 Cir., 208 F. 513, 523......13

Hansen v. May, 502 F.2d 728 (9th Cir. 1974)......................................11

Harbury v. Hayden, 522 F.3d 413, 417 (D.C. Cir. 2008)...........................1

Harrison v. McBride, 428 F.3d 652, 668 (7th Cir. 2005).............................12

Hughes v. Rowe, 449 U.S. 5, 22-23 (1980)....................................11

In re Brewer, 863 F.3d861, 868 (D.C. Cir. 2017).............................1

In re Murchison,349 U.S. at 136, 75 S.Ct. 623...............................12

In re Resolution of Judicial Misconduct Complaints About Dist. Judge Lynn Adelman,
965 F.3d 603 (7th Cir. 2020)....................14

Jude v. Comm'r of Soc. Sec., 908 F.3d 152, 157 n.4 (6th Cir. 2018).......22

Kallal v. CIBA Vision Corp., No. 13-1786 (7th Cir. Feb. 24, 2015)................7

Lebron v. United States, 279 F.3d 321, 325–31 (5th Cir. 2002)...............24

Levin v. United States, 568 U.S. 503, 509 (2013).............22,23

Lisenba v. California, 314 U.S. 219, 228 (1941))....12,13

LLC v. 21 Century Smoking, Inc., 513 F. Supp. 3d 839 (N.D. Ill. 2021).......14

Mathews v. Eldridge, 424 U.S. 319 (1976)....................11

Meyer, 510 U.S. at 477 (quoting 28 U.S.C. § 1346(b)).............................1

Michael v. Precision Alliance Group, LLC, 2014IL117376.....25

Michels v. United States, 31 F.3d 686, 687–89 (8th Cir. 1994).............24

Neder v. United States, 527 U.S. 1, 16, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)....17

Nelson, supra note 41, at 268–71...............................................1

O'Shea v. Littleton, 414 U.S. 488, 503, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)......15

Palmateer v. International Harvester Co., 85 Ill. 2d 124, 129 (1981).....24,25

Smith v. RB Distribution, Inc., 515 F. Supp. 3d 311, (E.D. Pa. 2021)………..22

Swearnigen-El v. Cook Cty. Sheriff's Dept., 602 F.3d 852, 864 (7th Cir. 2010)….23

Union Tool Co. v. Wilson, 259 U.S. 107, 112, 42 S.Ct. 427, 66 L.Ed. 848………..13

United States v. Approximately 81,454 Cans of Baby Formula, 560 F.3d 638, 641 (7th Cir. 2009)…………….13

United States v. Burge, 711 F.3d 803, 812 (7th Cir. 2013)………………….17

United States v. Burr, 25 F.Cas. 30, 35 (No. 14,692d) (CC Va. 1807) (Marshall, C.J.)…13

United States v. Dunnigan, 507 U.S. 87, 97, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993)…………….16

United States ex rel. Searcy v. Greer, 768 F.2d 906, 913 (7th Cir. 1985)……………12

United States v. Holland,22 F.3d 1040, 1047 (11th Cir.1994)………..17

United States v. Howard, 560 F.2d 281, 284 (7th Cir.1977)……………….17

Watkins v. Trans Union, LLC 869 F.3d 514 (7th Cir. 2017)……………….13

Wheeler v. Caterpillar Tractor Co., 108 Ill. 2d 502 (1985)……..25

Zurba v United States, 318 F.3d at 738–44 (2001)…………….24

80 U.S. (13 Wall.) 335, 347-348, 20 L.Ed. 646, 649-650.)…………………15

**STATUTES**

5 U.S.C. §1221(e)(1)………………………………………….3

10 U.S.C. § 2409……………………………………………………..1,2,3

18 U.S.C. Section 1621…………………………16,17

18 U.S.C. § 1621(1)…………………………16

28 U.S.C. 1291……………………………………………………..1,2

28 U. S. C. §1346(b)………..21,22

28 U. S. C. §1346(b)(1)………..23

28 U. S. C. §2674..................21,24

28 U.S.C. § 2675(b)..............24

28 U. S. C. §2676.................21

28 U.S.C. § 2679(b)(1).................22

28 U.S.C. § 2679(b)(2).................22

28 U.S.C. § 2680(h).......................22

41 U.S.C. § 4712.........................................................1,2,3

L.R. 56.1(b)(1)(2)..........................29

Rule 3.3, cmt. 3.................................14

Rule 3.3, cmt. 5. DR Distribs....................14

Rule 12(b)(6).................................................10

Rule 26................................................7,8,9,17,19,27,28

Rule 56(d)..............................................................7,8,9,19,27,28

FTCA...................................1,3,6,8,18,19,21,22,23,24,25

FTCA's Administrative Claims Process, 57 BAYLOR L. REV. 785 (2005)....24

First Amendment..................26,28

Title VII..........................26

National Defense Act of 2013, amended 2016.................................1,2,3

Whistleblower Act (740 ILCS § 174/1 et seq. (West 2014))..............25

Whistleblower Protections provisions of §827 and 828 of Pub. L. No. 112-239, 126 Stat. 1632 (2013), as amended by Pub. L. No. 114-261, 130 Stat. 1362 (2016)........3

section 1746 of title 28, United States Code......................16

**Book/Published Reading**

Laurence H. Tribe, American Constitutional Law § 10-18 at 753-54 (2d ed. 1988)...................................................................10

John E. Nowak, Ronald D. Rotunda, J. Nelson Young, Constitutional Law § 13.10 at 517 (3d ed. 1986)..............................................................10

Westling and Rasmussen, 16 Loy.U.Chi.L.J. at 275, 303 (cited in note 25)..............11

Zeigler and Hermann, 47 N.Y.U.L.Rev. at 205-06 (cited in note 2) (pro se litigants deserve fair and efficient screening of their claims)..................................................11

See section III.B.1...........................................................................12

## COMPLETE JURISDICTIONAL STATEMENT

In every case, the Appellate Court must assure our jurisdiction. In re *Brewer*, 863 F.3d 861, 868 (D.C. Cir. 2017). Under 28 U.S.C. 1291 grants this Appellate Court jurisdiction over final decisions of district courts. At all times relevant to this case, the United States employees of the Department of Justice, Bureau of Justice Assistance, Office of Justice Programs, (hereinafter, "DOJ") et al. operated in the State of Illinois. A person injured by the tortious activity of a federal employee generally has two potential targets that he might name as a defendant in a tort lawsuit: (1) the federal employee who committed the tort and (2) the federal government itself.[1] In 1946, Congress enacted the FTCA, [2] which effectuated "a limited waiver of the federal government's sovereign immunity"[3] from certain common law tort claims. With certain exceptions and caveats, the FTCA authorizes Nance to bring civil lawsuits, such as against the United States; for money damages; for injury to or loss of property, or personal injury or death; caused by a federal employee's[4] **negligent** or wrongful act or omission; while acting within the scope of his office or employment; under circumstances where the United States, if a private person, would be liable to Nance in accordance with the law of the place where the act or omission occurred.[5]

Pro se Nance brought this action pursuant to the Whistleblower Protection under the National Defense Act of 2013, amended 2016; 10 U.S.C. § 2409; 41 U.S.C. § 4712.

---

[1] *Harbury v. Hayden*, 522 F.3d 413, 417 (D.C. Cir. 2008)

[2] *Nelson*, supra note 41, at 268–71 (discussing the FTCA's legislative history).

[3] *Evans v. United States*, 876 F.3d 375, 380 (1st Cir. 2017), cert. denied, 139 S. Ct. 81 (2018).

[4] See infra "Employees and Independent Contractors."

[5] *Meyer*, 510 U.S. at 477 (quoting 28 U.S.C. § 1346(b))

Jurisdiction is invoked pursuant to 28 U.S.C. 1291 and the National Defense Act of 2013, amended 2016; 10 U.S.C. § 2409; 41 U.S.C. § 4712, and the 1st Amendment to the Constitution. Jurisdiction is invoked. This action properly lies in the Northern District of Illinois, Eastern Division because Nance and all defendants either reside in the District or engage in the operation of business in this District, and all events giving rise to Nance's claims occurred within the District. The Nance jurisdictional statement is complete and correct. Nance demanded of the District Court trial by jury. On January 9, 2024, the Honorable Judge LaShonda Hunt issued a final order and memorandum opinion. (Dkt. #38-41) Nance filed his notice of appeal with the Appellate Court on January 27, 2024.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

**First Amendment**

**Due Process**

**Discovery**

**Limits to judicial discretion**

**Duty of candor to the tribunal**

**Judicial immunity**

**Perjury in civil proceedings**

**FTCA**

## STATEMENT OF THE CASE

Nance is Pro se. This is a claim pursuant to the Whistleblower Act involving the Second Chance Act of 2007, which involves the policy of both Acts. Nance has a Ph.D. in Human Services with a focus on Social Policy Analysis and Planning. Nance sits on 20+ Advisory Committees for the Honorable Illinois 7th Congressional District Congressman

Danny K. Davis. Nance has been sitting on Congressman Davis's Second Chance Act

Advisory Committee since 2007. Congressman Davis is one of the principal sponsors of

the Second Chance Act bill. Nance assisted in developing some the legislative language

for the Second Chance Act bill signed by President Bush on April 10, 2008. Nance has

been a peer reviewer for the United States Department of Justice since 2009. Nance has

reviewed over 100 Second Chance Act proposals from all over the United States. Nance

understands the responsibilities of Second Chance Act grantees reporting fraud and

misappropriation of funds; not as our judicial system wants to interpret it, but rather, the

intention of the policymakers in Congress.

     Nance originally filed suit against DOJ, EMAGES, Inc. (hereinafter,

"EMAGES"), Hattie Wash (hereinafter, "Hattie") and Thomas Bradley (hereinafter,

"Bradley") pursuant to the National Defense Authorization Act (hereinafter, "NDAA")

Whistleblower Protections provisions of §827 and 828 of Pub. L. No. 112-239, 126 Stat.

1632 (2013), as amended by Pub. L. No. 114-261, 130 Stat. 1362 (2016), 10 U.S.C.

§2409; 41 U.S.C. §4712; 5 U.S.C. §1221(e)(1), which on June 8, 2021 the District Court

states "…the Court grants the government's motion [31] to dismiss. Nance's FTCA claim

is dismissed without prejudice (and without leave to amend). The remaining claims

against the government are dismissed with prejudice…." (Dkt. #64) Nance's original suit

was in the amount of $500,000.00 and he was injured by the conspiracy and tortious

actions of all defendants.

     EMAGES, Hattie, and Bradley conspired with DOJ employees Michael Dever

(hereinafter "Dever"), Andre Bethea (hereinafter, "Bethea"), and Tracey Willis

(hereinafter, "Willis") perpetrating a conspiracy and the tortious acts pursuant to the

NDAA Whistleblower Protections provisions of §827 and 828 of Pub. L. No. 112-239, 126 Stat. 1632 (2013), as amended by Pub. L. No. 114-261, 130 Stat. 1362 (2016), 10 U.S.C. §2409; 41 U.S.C. §4712; 5 U.S.C. §1221(e)(1).

**Case(s) (20cv06316 & 22cv03861)**

On May 1, 2018, Nance and Hattie Wash submitted an abstract and proposal for the Second Chance Act Comprehensive Community-based Adult Reentry Program (hereinafter, "SCA Grant"). On or about September 26, 2018, Nance and Hattie Wash received the Grant Award Letter from the Unites States Attorney General Jeff Sessions for Grant #2018-CY-BX-0025; funding the MA'AT project (hereinafter, "MA'AT") Trauma-Informed and Mentoring services from October 1, 2018, thru September 30, 2021.

On or about January 17, 2020, our Support Clerk, Dorothy Collins, resigned from the "MA'AT" project. On or about February 26, 2020, Hattie Wash drew down federal monies for this Support Clerk, Dorothy Collins. On or about March 30, 2020, Hattie Wash drew down monies again for this Support Clerk, Dorothy Collins, totaling approximately $800.00.

In April of 2020, Nance discussed the drawing down of funds for staff not employed with the grant with Congressman Davis. Congressman Davis suggested Nance talk with his partner about these funds first before filing any charges with the DOJ.

On or about April 7, 2020, there is an email chain between Nance and Hattie Wash addressing the fraudulent drawdown of funds for this Support Clerk, Dorothy Collins; the lack of operating supplies Nance requested from Hattie Wash, and Hattie Wash accusing Nance of being a bully because Nance requires staff and management to

adhere to policies and processes set up pursuant to our Abstract, Proposal, and Planning and Information Guide.

On April 8, 2020, Nance sent an email to Hattie Wash and Thomas Bradley" regarding the misappropriation of funds and fraud. Thomas Bradley was the accountant for the grant. On April 9, 2020, Nance received an email from Hattie Wash reporting the program is moving well during the Coronavirus. Nance asked Hattie Wash why she was still drawing down funds from the grant for a Support Clerk when we did not have one. Hattie Wash told Nance to mind his own business and to do his job. On April 10, 2020, Nance sent an email to Hattie Wash and Thomas Bradley informing him a drawdown of funds occurred in February and March of 2020 for Dorothy Collins who had resigned on or about January 17, 2020.

On April 15, 2020, Nance sent Hattie Wash and Thomas Bradley another email stating, in part," if 1 do not hear from you about this issue, I am going to report it to the Office of Justice Programs. Where did this money go? What was it spent on? I will not be part of any fraud scheme." On April 15, 2020, Hattie Wash and Thomas Bradley responded to Nance in an email stating, in part, "Dr Nance received your email, however because of the sensitive nature of your charges, any conversation concerning 2nd Chance Accounting Procedures need to be discussed with me and Dr Wash CEO .... " On April 17, 2020, Nance sent another email to Thomas Bradley informing him Hattie Wash was not listening to him about the misappropriation of funds and fraud, and that Nance was going to report this to DOJ representatives. On April 18, 2020, Hattie Wash and Thomas Bradley sent Nance an email stating, in part, " ... After reading your email I stand by my initial request for a meeting between you, Dr. Wash, and myself .... "

On October 23, 2020, Nance filed his original Whistleblower Act complaint in federal court (20cv06316) against the DOJ, et al. On March 26, 2021, the Department of Justice, Bureau of Justice Programs, Office of the Chief Financial Officer sent a letter to Hattie Wash stating, in part,

> "…Based on our review…these procedures did not clearly define areas of responsibilities relative to federal grants management, and did not include specific provisions for tracking grant expenditures by approved budget categories…(p.2) Based on an analysis of the EMAGES financial activities, we noted that the EMAGES is commingling the grant 2018-CY-BX-0025 funds with other federal agencies' funds within their accounting system…(p.5) Based on a judgmental sample review of expenditures, we noted that the EMAGES was unable to fully support and justify the rational allocation method used to charge $800 in Other Cost to award 2018-CY-BX-0025…." (p.8) (Dkt. #20-2, pp.1-11)

The United States Department of Justice employees "Michale Dever", "Andre Bethea", and "Tracey Willis" having working knowledge of the reported fraud and misappropriation of funds had a responsibility to fully investigate Nance's allegation before taking the grant back, but rather, conspired with Hattie Wash taking the grant back thus causing the termination of Nance's employment. Nance was a Whistleblower.

On June 8, 2021, Judge Jorge L. Alonso issued a Memorandum Opinion and Order (Dkt. #64) dismissing with prejudice all claims against the United States Department of Justice and its employees named above accept the FTCA claim; and

continued all claims against EMAGES, Inc., Hattie Wash, and Thomas Bradley (20cv06316).

On June 2, 2023, Executive Committee Order, General Order 23-0023 was issued assigning the Honorable Judge LaShonda Hunt to case #20cv06316. On July 26, 2022, Nance filed his original Whistleblower Complaint (22cv3861) against the United States, et al. (Dkt. #1)

On January 9, 2024, Judge LaShonda A. Hunt issued a final order in this matter dismissing Nance's FTCA claims with prejudice. On January 11, 2024, Nance and EMAGES, Inc. entered settlement discussions. (Dkt. 158) (case #20cv06316) Nance is a Whistleblower with all due protections. **United States defendants and their Attorney Kurt N. Lindland had a duty to report (Dkt. #20-2, pp.1-11) to the District Court before the Court's June 8, 2021 hearing.**

Judges Alonso and Hunt denied Nance discovery against DOJ and the United States, respectively.

## SUMMARY OF ARGUMENT

### Discovery

"Discovery" in the context of U.S. trial practice refers to the process by which parties to a legal proceeding gain access to facts which may directly or indirectly support their claims or defenses. In the United States, there are five basic forms of discovery: depositions, interrogatories, requests for production of documents (or permission to inspect), physical and mental examinations, and requests for admission. Discovery is not the process by which the court discovers the facts; discovery is the process by which the parties discover the facts which are then presented to the court by the parties. The

adversarial process is intended to ensure that the relevant facts are brought to the attention of the court.

The Federal Rules of Civil Procedure allow a nonmovant, when faced with a motion for summary judgment, to ask the court to defer ruling on the motion, to allow it additional time to take discovery. The process is straightforward: a nonmovant must show the court "by affidavit or declaration" the specified reasons that prevent it from presenting facts essential to justify its opposition. See FRCP 56(d) The "affidavit or declaration" portion of the rule is not merely a suggestion, as failure to submit one justifies a district court's denying the request to take additional discovery, and ultimately, granting summary judgment in the absence of additional facts. That lesson was recently learned by the plaintiff in *Kallal v. CIBA Vision Corp.*, No. 13-1786 (7th Cir. Feb. 24, 2015). This Seventh Circuit decision should remind practitioners to comply strictly with Rule 56(d) when asking the court to defer ruling on a summary judgment motion. Nance filed a Rule 56(d) motion and an affidavit requestion discovery. **Judges Alonso and Hunt ignored Nance's request for discovery from the United States Defendant-Appellees**.

On November 14, 2022, Nance filed "Plaintiff Memorandum of Law in Opposition to Defendants Motion to Dismiss or in the Alternative Summary Judgment (Dkt. #11). Nance filed his Motion Pursuant to Rule 26 and 56(d) on November 14, 2022 (Dkt. #11-4). Nance filed his accompanying Affidavit/Declaration on November 14, 2022 (Dkt. #11-5). Judge Alonso still had this case. Judge Hunt inherited the case on June 2, 2023. Both Judges, Alonso and Hunt, ignored Nance's motions for discovery. Not only did Judge Hunt ignore Nance's Rule 26 and 56(d) motions, on August 14, 2023, she

issued a Minute Order stating "…the Government Defendants' motion to dismiss is granted without prejudice as to the FTCA claim and with prejudice as to the remaining claims…If Nance is capable…." (Dkt. #18) The statement by Judge Hunt "If Nance is capable" is prejudicial and disrespectful.

**Due Process**

      The District Court has violated my 1st Amendment rights to due process, freedom of speech, freedom of expression and procedural due process rights. The District Court has violated the basic principles for the discovery processes. Nance has filed numerous documents demonstrating violations basic principles of law to how litigation proceeds, such as in case #22cv3861: Dkt. #11, 11-1, 11-2, 11-3, 11-4, 11-5 denying Nance discovery from the United States. Judge Alonso, in case #20cv06316, allowed discovery from defendant-appellees EMAGES and Hattie Wash "after" he dismissed the United States case on June 8, 2021. (Dkt. #64) Judge Alonso did not dismiss with prejudice all claims against the United States defendant-appellees. Judge Alonso dismissed without prejudice Nance's FTCA claims but did not allow Nance to conduct discovery even though Nance requested discovery from the United States. How is a litigant supposed to survive litigating when he/she has to litigate against the United States government and the judges in charge of the case?

      On September 9, 2023, Nance filed an exhibit dated March 26, 2021 issued by the United Department of Justice, Office of Justice Programs, Officer of the Chief Financial Officer on Hattie Wash and EMAGES, Inc. that Judge LaShonda Hunt ignored stating, in part,

"Based on our review, we noted that the EMAGES maintains general written procedures for Federal Grants Management. However, these procedures did not clearly define areas of responsibilities relative to federal grants management. and did not include specific provisions for tracking grant expenditures by approved budget categories, compliance with federal cash management policies, requesting drawdowns, reconciliation between accounting records and Federal Financial Reports (FFRs), requesting prior approvals for paying consultant fees in excess of the Department of Justice's (DOJ) threshold amounts, requesting prior approvals for sole source contracts in excess of the DOJ threshold amounts, and other pertinent federal grants management information (p.2)… Based on an analysis of the EMAGES' financial activities, we noted that the EMAGES is commingling the grant 2018-CY-BX-0025 funds with other federal agencies' funds within their accounting system. As a result, we could not determine the actual expenditures by approved budget categories and the total cumulative expenditures charged to this grant from the EMAGES' accounting records. (p.5) (Dkt. #20-2, Ex. 1, pp. 1-11)

The information Nance received from the United States Department of Justice, Office of Justice Programs, Officer of the Chief Financial Officer during the discovery processes with EMAGES and Hattie Wash had to be known to the United States defendant-appellees. This finding supports Nance's Whistleblower Complaint and his request for Discovery from the United States pursuant to Rule 26 and 56(d). The District

Court violated my constitutional right to due process and the rights of a pro se litigant raising civil rights claims.

The Supreme Court has guaranteed pro se litigants, apart from the due process rights accorded all litigants in civil cases, is the right to have courts liberally construe their pleadings. *Haines v. Kerner*, 404 U.S. at 521.

## ARGUMENT

**Protected Interest – Equal Protection (Standard of Review – Rational Basis Test)**

Civil litigants have a protected interest in a meaningful opportunity to be heard. This interest is analytically distinct from any protected liberty or property interests that may underlie the litigant's cause of action or legal defenses.[6] Litigants have invoked the interest in a meaningful opportunity to be heard in order to gain access to the courts in the absence of any potential deprivation of an underlying substantive interest."[7] Regardless of whether there are protected liberty or property interests attached to a given pro se litigant's underlying claim, courts should hold that a meaningful opportunity to be heard is itself a protected interest for such litigants.

A refusal to construe pleadings flexibly, as required under *Haines*, is tantamount to withdrawal of that meaningful opportunity. For instance, an otherwise meritorious claim could be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. The very point of the *Haines* approach is to determine if, when a pro se civil Nance has not said the "magic words" (or has said the wrong words), a cause

---

[6] 9 Laurence H. Tribe, American Constitutional Law § 10-18 at 753-54 (2d ed. 1988).
[7] John E. Nowak, Ronald D. Rotunda, J. Nelson Young, Constitutional Law § 13.10 at 517 (3d ed. 1986).

of action exists.[8] Even though the number of meritorious pro se complaints may be small, it is essential that these complaints be recognized.[9] The protection of federal court litigants' interest in a meaningful opportunity to be heard while litigating is a central aspect of procedural due process.

Once a protected interest is identified, courts must then determine how much process is due the civil pro se litigant. The Supreme Court in *Mathews v. Eldridge* promulgated its test for determining the procedural protections to which a litigant is entitled by due process."[10] This test requires consideration of three factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[11]

The pro se civil litigant's constitutionally protected interest is in a meaningful opportunity to be heard. Obviously, valuation of this interest includes the value of the underlying substantive claim which he may be either prevented or deterred from bringing. It also includes the value of this opportunity itself.[12] A meaningful opportunity to be heard is a core due process value. As discussed above, if one cannot proceed at all,

---

[8] See, e.g. *Hansen v. May*, 502 F.2d 728 (9th Cir. 1974) (pro se Nance's claim, styled one for "habeas corpus," should have been treated by lower court as stating a claim under § 1983). Some argue that, carried too far, the Haines approach will find a cause of action where none exists. See Justice Rehnquist's dissent in *Hughes v. Rowe*, 449 U.S. 5, 22-23 (1980).
[9] Westling and Rasmussen, 16 Loy.U.Chi.L.J. at 275, 303 (cited in note 25).
[10] 424 U.S. 319 (1976).
[11] Id. at 335.
[12] See Zeigler and Hermann, 47 N.Y.U.L.Rev. at 205-06 (cited in note 2) (pro se litigants deserve fair and efficient screening of their claims).

one clearly has lost more than simply the damages, or the injunctive relief sought because the meaningful opportunity to be heard is itself a protected interest.[13]

**Due Process - (Standard of Review – Rational Basis Test)**

The general principles concerning a party's due process right to an impartial judge are clear in the jurisprudence of the Supreme Court. "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison,*349 U.S. at 136, 75 S.Ct. 623. Although this right encompasses "an absence of actual bias," the contours of this right cannot be defined with "precision." *Id.* Indeed, the Supreme Court has made clear that, when the presiding judge is not impartial, there is a "structural defect in the constitution of the trial mechanism" that "def[ies] analysis by `harmless error' standards." *Arizona v. Fulminante,*499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); see also *Edwards v. Balisok,*520 U.S. 641, 647, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997); *Franklin,*398 F.3d at 960-61 (citing *Bracy v. Schomig,*286 F.3d 406, 414 (7th Cir. 2002) (en banc)). See *Harrison v. McBride,* 428 F.3d 652, 668 (7th Cir. 2005).

To determine whether a due process violation occurred, courts look to the circumstances and reasons presented to the trial judge at the time the request is denied. Then, only when the judge abused that discretion will there also be a finding of a due process violation. *United States ex rel. Searcy v. Greer,* 768 F.2d 906, 913 (7th Cir. 1985).

An evidentiary error may violate due process if it is denied a fundamentally fair trial. *Brown v. Watters*, 599 F.3d 602, 616 (7th Cir.), cert. denied 131 S. Ct. 293 (2010). "It is true that evidentiary errors do result in a federal constitutional violation when the error "'so infused the trial with unfairness as to deny due process of law.'" *Estelle*, 502

---

[13] See section III.B.1.

U.S. at 75 (quoting *Lisenba v. California*, 314 U.S. 219, 228 (1941)). See *Halligan v.*

*Burke*, Case No. 17 C 3757 (N.D. Ill. Feb. 12, 2018). "It is generally held that the trial

court abuses its discretion when it fails or refuses properly to apply the law to conceded

or undisputed facts. *Union Tool Co. v. Wilson*, 259 U.S. 107, 112, 42 S.Ct. 427, 66 L.Ed.

848. Misapplication of the law to the facts is in itself an abuse of discretion. *Hanover Star*

*Milling Co. v. Allen Wheeler Co.*, 7 Cir., 208 F. 513, 523. See *Clemons v. Board of*

*Education of Hillsboro*, 228 F.2d 853, 857-58 (6th Cir. 1956). "Discretion is not

unbridled; it is exercised under law. "Discretionary choices are not left to a

court's inclination but to its judgment; and its judgment is to be guided by sound legal

principles." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416, 95 S.Ct. 2362, 2371, 45

L.Ed.2d 280 (1975), quoting from *United States v. Burr*, 25 F.Cas. 30, 35 (No. 14,692d)

(CC Va. 1807) (Marshall, C.J.).

**Limits to judicial discretion - (Standard of Review – Rational Basis Test)**

"When rules, standards, and precedents govern, the district court's discretion is

limited." See *United States v. Approximately 81,454 Cans of Baby Formula*, 560 F.3d

638, 641 (7th Cir. 2009); "This standard of review is consistent with other areas of law in

which district judges have discretion but in exercising it must apply the correct rule of

law. See, e.g., *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110

L.Ed.2d 359 (1990) ("district court would necessarily abuse its discretion [in deciding

Rule 11 sanctions motion] if it based its ruling on an erroneous view of the law"); *Ervin v.*

*OS Restaurant Services, Inc.*, 632 F.3d 971, 976 (7th Cir. 2011) (application of incorrect

legal rule to decide class certification would amount to abuse of discretion). *Watkins v.*

*Trans Union*, LLC 869 F.3d 514 (7th Cir. 2017).

**Duty of candor to the tribunal - (Standard of Review – Rational Basis Test)**

"There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation." Rule 3.3, cmt. 3.The duty of candor toward the court is premised on the attorney's obligation as an officer of the court to prevent the fact finder from being misled by false evidence. Rule 3.3, cmt. 5. DR Distribs., *LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839 (N.D. Ill. 2021) (citing to attorney's rules of professional conduct). An independent and honorable judiciary is indispensable to justice in our society. A judge should maintain and enforce high standards of conduct and should personally observe those standards, so that the integrity and independence of the judiciary may be preserved. *In re Resolution of Judicial Misconduct Complaints About Dist. Judge Lynn Adelman*, 965 F.3d 603 (7th Cir. 2020).

**Judicial immunity - (Standard of Review – Rational Basis Test)**

"The principle of judicial immunity has been long a part of our common law and the rationale for the same was succinctly stated by the Supreme Court of the United States in the early case of *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871), as follows: "For it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to everyone who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful.

\* \* \*

"Nor can this exemption of the judges from civil liability be affected by the motives with which their judicial acts are performed. The purity of their motives cannot in this way be the subject of judicial inquiry.

* * *

"If civil actions could be maintained . . . against the judge, because the losing party should see fit to allege in his complaint, that the acts of the judge were done with partiality, or maliciously, or corruptly, the protection essential to judicial independence would be entirely swept away. Few persons sufficiently irritated to institute an action against a judge for his judicial acts would hesitate to ascribe any character to the acts which would be essential to the maintenance of the action." *80 U.S.* (13 Wall.) 335, 347-348, 20 L.Ed. 646, 649-650.)

Despite its fundamental and efficacious purpose, the doctrine of judicial immunity is not absolute and unlimited; it does not immunize every state court judge in every lawsuit. On the contrary, application of the doctrine is restricted to its single objective: to protect judicial freedom in the delicate process of deciding civil and criminal matters on their merits. Where the initiative and independence of the judiciary will not be effectively impaired, courts have refused to apply the doctrine of judicial immunity. For example, there is no official immunity from criminal liability. *O'Shea v. Littleton*, 414 U.S. 488, 503, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). The Supreme Court recognized long ago that a state court judge can be made to answer criminally for violating the criminal provisions of the Civil Rights Act. *Ex parte Virginia*, 100 U.S. 399, 25 L.Ed. 676 (1879). In addition, federal courts have held that application of the doctrine is restricted to the following areas: 1. immunity applies only when judges are faced with

suits involving their judicial as opposed to ministerial or administrative duties, and 2. immunity applies only when officials are sued for damages. *Doe v. Country of Lake, Indiana*, (N.D.Ind. 1975), 399 F. Supp. 553, 555 (N.D. Ind.1975)

**Perjury - (Standard of Review – Rational Basis Test)**

18 U.S.C. Section 1621 - Perjury generally whoever (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or (2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true; is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States.

18 U.S.C. § 1621. To be guilty of perjury under 18 U.S.C. § 1621(1), a defendant's false statement must be material. See *United States v. Dunnigan*, 507 U.S. 87, 97, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993) (discussing role of perjury statutes in "uphold[ing] the integrity of our trial system"), ("A witness testifying under oath or affirmation violates [§ 1621(1) ] if she gives false testimony concerning a material matter with the willful intent to provide false testimony...."). A false statement is material if it has "a natural tendency to influence, or [is] capable of influencing, the decision of the

decision-making body to which it was addressed." *Neder v. United States*, 527 U.S. 1, 16, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (citation omitted); see also United States v. Howard, 560 F.2d 281, 284 (7th Cir.1977) (defining materiality for purposes of § 1621). *United States v. Burge*, 711 F.3d 803, 812 (7th Cir. 2013).

**Perjury in civil proceedings - (Standard of Review – Rational Basis Test)**

"To the extent that *Burge* suggests that his culpability is diminished because his responses were given in the context of a civil interrogatory, we reject the assertion. See *United States v. Holland*,22 F.3d 1040, 1047 (11th Cir.1994) ("[W]e categorically reject any suggestion, implicit or otherwise, that perjury is somehow less serious when made in a civil proceeding."). Perjury and obstruction of justice are offenses against the integrity of the judicial system—not solely injuries to opposing parties in a civil suit. See *United States v. Dunnigan*,507 U.S. 87, 97, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993) (discussing role of perjury statutes in "uphold[ing] the integrity of our trial system").

The United States filed their motion to dismiss or in the alternative summary judgment to circumvent the discovery process requested by Nance and Judge Jorge Alonso and Judge LaShonda Hunt allowed it. Nance adamantly requested Discovery before the District Court made any rulings on a Motion to Dismiss or in the alternative Summary Judgment. (Dkt. #11, 11-4, 11-5)

This is how the District Court treated a pro se Nance throughout this litigation. On June 8, 2021, Judge Alonso dismissed Nance's complaint, in part, ignoring discovery. (Dkt. #64) On October 7, 2022, Nance filed a motion pursuant to Rule 26 for initial discovery. On October 24, 2022, Nance submitted a 2nd set of interrogatories to EMAGES (Dkt. #15) On November 14, 2022, Nance filed his memorandum of law in

opposition to defendant motion to dismiss or in the alternative summary judgment. (Dkt. #11, 11-4, 11-5) Nance emphatically stated there has been no initial discovery pursuant to Rule 26. On May 29, 2023, Nance filed a motion for sanctions against one of EMAGES attorneys. (Dkt. #144) Soon after, EMAGES Attorney Adam Decker filed a motion for sanctions against Nance. On June 12, 2023, Nance responded to EMAGES motion for sanctions. (Dkt. #149) Magistrate Judge Beth W. Jantz dismissed both motions for sanctions. The motions for sanctions stemmed from the EMAGES discovery processes where EMAGES attorney Adam Decker demeaned and disrespected Nance. Yes, Judge Alonso allowed discovery between Nance and EMAGES and Hattie Wash but not with the United States, nor did Judge Hunt allow discovery from the United States

After Nance submitted himself to EMAGES discovery and finding out about the ruling dated March 26, 2021 issued by the United Department of Justice, Office of Justice Programs, Officer of the Chief Financial Officer on Hattie Wash and EMAGES, Inc., Hattie Wash and EMAGES, Inc.'s Attorney Derrick Thompson and Nance entered into settlement discussions. On November 20, 2023 and January 11, 2024 Magistrate Judge Beth W. Jantz held status hearings continuing the settlement discussion to March 14, 2024. Judge Jantz assigned Nance an Attorney Bradley Manewith for purposes of settlement discussions.

On August 14, 2023, Judge Hunt issued a memorandum opinion dismissing all Nance's claims accept the FTCA claim. (Dkt. #19) On January 9, 2024, Judge Hunt issued a final order and memorandum opinion pulling arbitrary documents to suit her purposes for dismissal from all Nance's litigation with Judge Alonso and determining her own set of facts that she wanted to dismiss Nance's case stating, in part, "Nance had also

refiled his so called whistleblower complaint…." There was no mention of Nance's discovery request pursuant to Rule 26 (Dkt. #s 39-41) or Nance's Motions for Discovery pursuant to Rule 26 and 56(d). (Dkt. #11, 11-4, 11-5)

On January 9, 2024, Judge Hunt states "she reviewed Nance's amended complaint, the government's motion to dismiss or for summary judgment, Nance's response, and the government's reply. So, I have reviewed all of those materials…if there's anything that you want…anything additional that you want to add…." (TR, Dkt. #43, p.2, L18-25) Nance did not discuss there was no discovery because Judge Hunt reported she had reviewed all the material. Nevertheless, the motions had been filed. (Dkt. #11, 11-4, 11-5)

Judge Hunt states "…I agree with the government here that the amended complaint also has to be dismissed pretty much for the same issue that I raised in the memorandum opinion that I wrote back in August at docket 19…there are certain types of torts that you can raise and others that are just not allowed under the FTCA…I think here, you filed your amended complaint, and you have five claims that you're raising: Intentional infliction of emotional distress, conspiracy, abuse of process, defamation, and misrepresentation and deceit. And none of those are cognizable, meaning you can't raise them under FTCA. In addition, you added the whistleblower and " (TR, Dkt. 43, p.3, L7-25) retaliation claims, which I had previously dismissed with prejudice because you can't file those against the government since the government wasn't your employer here…Your allegations don't state a cause of action here under the FTCA…you don't allege facts that would support, for example, a negligence claim under the FTCA." (TR, Dkt. #43, p.4, L1-10) The government is the contractor for the grant to EMAGES.

On September 9, 2023 (Dkt. #20), Nance filed his Amended Complaint pursuant

to Judge Hunt's August 14, 2023 memorandum opinion and order. Nance's Amended

Complaint states, in part, as follows:

> At least 95% of all exhibits submitted here is new evidence discovered via
>
> EMAGES, Inc. and Hattie Wash's deposition of plaintiff on August 29,
>
> 2023, which makes the United States Department of Justice culpable.
>
> Plaintiff has a plethora of evidence received from the EMAGES, Inc.
>
> deposition; too much to include in this Amended Complaint. It is
>
> discoverable material. Discovery from the United States Department of
>
> Justice as it relates to this litigation and statement of facts will produce
>
> additional, new, and damning evidence to support plaintiff's litigation and
>
> claims. It appears in the Memorandum Opinion and Order on August 14,
>
> 2023 from Judge LaShonda A. Hunt has stripped plaintiff's Whistleblower
>
> Act rights and claims reducing this Amended Complaint to a FTCA claim.
>
> With the new statement of facts and evidence plaintiff has produced from
>
> a previous defendant(s) EMAGES, Inc. and Hattie Wash's deposition on
>
> August 29, 2023, plaintiff's Whistleblower Act rights and claims should
>
> be restored. The United States Department of Justice (DOJ) defendants,
>
> Michael Dever, Andre Bethea, Tracey Willis; and Contractors of the DOJ,
>
> BETHA Associates, Inc., Leidos, Bernice Horne and Abitha William; and
>
> the Assistant U.S. Attorney defending the defendants in this matter
>
> misrepresented their case and deceived this court knowing the evidence
>
> for fraud and misappropriation of funds by defendants EMAGES, Inc. and

Hattie Wash brought by the pro se plaintiff was real, honest, and true; and that the evidence demonstrates shortly after pro se plaintiff filed his complaint DOJ representatives discovered pro se plaintiff's allegations of fraud and misappropriation of funds filed under the protections of the Whistleblower Act were true and correct. Yet they persecuted and defamed pro plaintiff in this court proceeding, attempting to destroy his name, legacy, and integrity. (p.15)

### FTCA - (Standard of Review – Strict Scrutiny Test Affirmative Action)

The Federal Tort Claims Act (FTCA) allows Nance to bring certain state-law tort claims against the United States for torts committed by federal employees acting within the scope of their employment, provided that the plaintiff alleges six statutory elements of an actionable claim. See 28 U. S. C. §1346(b). The Federal Tort Claims Act (FTCA) allows Nance to bring certain state-law tort suits against the Federal Government. 28 U. S. C. §2674; see also §1346(b). It also includes a provision, known as the judgment bar, which precludes "any action by Nance, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim" if a court enters "the judgment in an action under section 1346(b)." §2676. A claim is actionable if it alleges the six elements of §1346(b), which are that the claim be: "[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

*Ibid.* (quoting §1346(b)). The FTCA only authorizes tort lawsuits against the United

States itself; See, e.g., *Jude v. Comm'r of Soc. Sec.*, 908 F.3d 152, 157 n.4 (6th Cir. 2018)

("The only proper defendant in an FTCA claim is the United States."). It expressly

shields individual federal employees from personal liability for torts that they commit

within the scope of their employment. *Levin v. United States*, 568 U.S. 503, 509 (2013).

That said, the FTCA shields federal employees from liability only for tort claims; it does

not shield federal employees from personal liability for constitutional or statutory

violations. See 28 U.S.C. § 2679(b)(2) Thus, under the FTCA the remedy against the

United States "is exclusive of any other civil action or proceeding for money damages"

that might otherwise be available "against the employee whose act or omission gave rise

to the claim." 28 U.S.C. § 2679(b)(1). See also *Levin,* 568 U.S. at 509. This provision of

the FTCA is "often called the Westfall Act." *Id.* (pp.16-17)

     In count four, *Smith* asserts an FTCA claim against the United States for

intentional infliction of emotional distress ("IIED"). The United States argues that, even

though IIED is not one of the torts explicitly listed in § 2680(h), it is nevertheless

excluded under that provision because the IIED claim "arises out of" one of the

enumerated torts (Doc. 16). 28 U.S.C. § 2680(h). Specifically, the United States claims

that the IIED claim is based on the incident where *Smith v. RB Distribution, Inc.*, 515 F.

Supp. 3d 311, (E.D. Pa. 2021) co-worker threw paper at her, meaning it arises out of

assault and is therefore barred by § 2680(h) (Doc. 16). The Court disagrees. *Smith's* IIED

claim appears to be based not only on the paper-throwing incident, but also on the

harassment and retaliation that she allegedly suffered from her supervisor. Therefore, the

IIED claim is based on conduct above and beyond the assault and consequently is not barred by that exception.

Nance claims IIED in his causes of action. Under Illinois law, to succeed on a claim for intentional infliction of emotional distress (IIED), a plaintiff must prove that: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen-El v. Cook Cty. Sheriff's Dept.*, 602 F.3d 852, 864 (7th Cir. 2010). Nance was 71 years old when he was terminated. Nance receives social security benefits. Nance owns a home and a car, which he pays a car note over $500.00 a month. In order for Nance to retain employment at this age, he would have to get a grant, which Nance applied for a DOJ Second Chance Act grant and was denied. (pp.18-19)

Nance maintains that the United States violated his Due Process First Amendment rights by retaliating against him for blowing the whistle on fraud and gross misappropriation of funds. The Supreme Court case of *Bivens* authorizes the filing of constitutional suits against individual federal officers. *Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages. *Levin v. United States*, 568 U.S. 503, 506 (2013) The Federal Tort Claims Act waives sovereign immunity from tort suits, 28 U. S. C. 1346(b)(1), except for certain intentional torts, including battery; it originally afforded tort victims a remedy against the

2d 124, 129 (1981). It is a limited and narrow exception to the general rule that employees are at-will. Fellhauer v. City of Geneva, 142 Ill. 2d 495, 505 (1991). ¶ 23 The United States, by and through their actions, caused a retaliatory discharge. To state a claim for retaliatory discharge, an employee must plead that (1) the employer discharged the employee, (2) the discharge was in retaliation for the employee's activities, and (3) the discharge violates a clearly mandated public policy. *Michael*, 2014 IL 117376, ¶ 31.

To succeed in a retaliatory discharge claim, the public policy alleged by Nance must be found in the state or federal constitutions and statutes and, when they are silent, in Illinois or federal case law. *Palmateer*, 85 Ill. 2d at 130; see *Wheeler v. Caterpillar Tractor Co.*, 108 Ill. 2d 502 (1985) (this court found a clearly mandated public policy enunciated in federal legislation and regulations, which were national in scope) a violation of the Whistleblower Act (740 ILCS § 174/1 et seq. (West 2014)). The Whistleblower Act provides employees protection from an employer's retaliation for certain disclosures and refusals and prohibits policies that prevent an employee from disclosing information to a government agency that the employee reasonably believes violate a state or federal law, rule, or regulation. 740 ILCS 174/10, 15, 20, 20.1, 20.2 (West 2014).

Nance informed the United States that if they allowed his employer, EMAGES, Inc., to give the grant back they (United States defendants) would be liable in violating the Whistleblower Act because plaintiff would lose his employment. Plaintiff offered a solution, which was to give the grant to plaintiff's organization, C.L.I.C.K. Services, NFP, instead of closing the grant. (pp.30-31)

In order to be eligible to make a FTCA claim, there are four key things you must prove: (1) An employee or agent of the federal government harmed you. (2) The employee's acts or omissions were negligent or intentionally wrongful, (3) the employee was acting within the scope of their duties at the time of the harm, and (4) you were hurt as a direct result of the negligence of the employee.

The Federal Tort Claims Act is a 1946 law that entitles you to pursue a claim against the federal government if a government worker caused you harm while performing their official duties. The Act requires you to first make an administrative claim before proceeding with a lawsuit in a U.S. District Court if no settlement agreement can be reached with the government agency liable for losses. Nance satisfied this requirement. Nance stated, he offered a solution and the United States defendants refused the offer. (pp.31-32)

The above statements were made in Nance's Amended Complaint. These are Nance's Amended Complaint claims: Claim #1 United States for intentional infliction of emotional distress; Claim #2 United States for conspiracy; Claim #3 United States for abuse of process; Claim #4 United States for defamation; Claim #5 United States for misrepresentation and deceit; Claim #6 United States retaliating in violation of the Whistleblower Protection Act; Claim #7 United States retaliation for filing a Whistleblower complaint for fraud and gross misappropriation of funds violating Title VII and the First Amendment. (pp.32-33)

Nance requested to amend his complaint for a 2nd time in Judge Hunt's court. Judge Hunt reported she gave me 2 chances to amend. Nance informed Judge Hunt she did not. Judge Hunt stated she misspoke but still denied Nance the opportunity to amend

his complaint to correct the claims…And so I'm asking for the opportunity, being pro se…So, I can put it to what you are saying is defective because I did put claims in there for that history…and I guess it is mixed in there to where it can be pictured as you just stated…Ma'am, what first opportunity did I have? (TR, Dkt. #43, p.5, L3-23; p.6, L6-12; p.7, L14)

In the transcript, Judge Hunt states "…One last point that I want to make here is that it is very important to me that everyone is treated with respect…and I expect that from parties and from litigants and from counsel. And I noticed that there were a number of derogatory remarks in the…in your statements, in your materials, about opposing counsel. And I'll just say that's really not appropriate…Ma'am, he made a personal attack against me…I want that on the record, too. Okay. All right. That's your position here. I'm telling you what I see in the documents, and I'm just instructing you, before me, I don't tolerate that at all. Okay, I understand that. So, that means you're not going to correct him? You're not going to correct him, just me?…I just want it on the record. I just want it on the record. (TR, Dkt. #43, p.8, L3-25) So, my comment is to you because I see in the papers…(TR, Dkt. #43, p.9, L3-13) Okay, I'm going to raise it in the appeal…Because I think this decision has something to do with that….(TR, Dkt. #43, p.10, L2; L5-6)

Judge Hunt singled Nance out for voicing his opinion, which violated Nance's First Amendment Right to Free Speech and Freedom of Expression. Nance truly believes Judge Hunt also makes this ruling due to Nance's writings on his social media page posting of this case: www.x.com/clickforjustice. Nance will not be muzzled from speaking truth to power.

**Conclusion**

The District Court denied Nance Discovery pursuant to Rule 26 and 56(d). Nance filed a timely Rule 26 and 56(d) to avoid summary judgment. Nance obtained evidence in furtherance of the conspiracy claim via a deposition by EMAGES and Hattie Wash, which affirms Nance's Whistleblower complaint and his legitimate claims, which Judges Alonso and Hunt dismissed with prejudice. Nance's First Amendment rights were violated. Judge Hunt's decision was biased and prejudiced toward Nance due to his exercising his 1st Amendment rights of free speech, freedom of expression publishing his motions filed in this case on his social media platforms. Plaintiff-Appellant respectfully requests this Appellate Court overrule the District Courts dismissal with prejudice, remand for further proceedings with instructions granting Discovery and how it shall be done; and whatever else this Honorable Appellate Court deems necessary and proper.

/s/Fred L. Nance Jr., Plaintiff-Appellant
Pro se
17239 Evans Avenue
South Holland, Illinois 60473-3436
708-921-1395
frednance@clickservices.org

**AFFIRMATIVE STATEMENT**

Pro se Plaintiff-Appellant, Fred L Nance Jr., affirms to the best of his ability that all materials required by Cir. R. 30(a) & (b) are included in the appendix. Cir. R. 30(d)

/s/Fred L. Nance Jr., Plaintiff-Appellant
Pro se
17239 Evans Avenue
South Holland, Illinois 60473-3436
708-921-1395
frednance@clickservices.org

## CERTIFICATE OF COMPLIANCE

The undersigned, Pro se Plaintiff-Appellant, Fred L Nance Jr., furnishes the following in compliance with F.R.A.P. Rule 32(a)(7):

I hereby certify that this brief conforms to the rules contained in F.R.A.P. Rule 32(a)(7) for a brief produced with a proportionally spaced font. The brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: This document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 12-point font size and Times New Roman. The length of this brief is  8,248  words.

Dated:     3/14/2024

DocuSigned by:

*Dr. Fred L Nance Jr*

5F33259F36DE4CF...

/s/Fred L. Nance Jr., Plaintiff-Appellant
Pro se
17239 Evans Avenue
South Holland, Illinois 60473-3436
708-921-1395
frednance@clickservices.org

## PROOF OF SERVICE

The undersigned, Pro se Plaintiff-Appellant, Fred L Nance Jr., hereby certifies that on

**3/18/2024**   , two copies of the Brief and Required Short Appendix of Appellant and one copy

of the Separate Appendix as well as a digital version containing the brief, were delivered by U.S.

Mail to Kurt N. Lindland, Assistant United States Attorney, 219 South Dearborn Street, Chicago

Illinois 60604, kurt.lindland@usdoj.gov, counsel for the Defendant-Appellee, United States.

Dated   **3/18/2024**

/s/Fred L. Nance Jr., Plaintiff-Appellant
Pro se
17239 Evans Avenue
South Holland, Illinois 60473-3436
708-921-1395
frednance@clickservices.org

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), Pro se Plaintiff-Appellant certifies that all material required by Circuit Rule 30(a) and (b) are included in the Appendix.

/s/Fred L. Nance Jr., Plaintiff-Appellant
Pro se
17239 Evans Avenue
South Holland, Illinois 60473-3436
708-921-1395
frednance@clickservices.org

## SHORT APPENDIX

1.  On February 17, 2021, the District Court denied pro se Nance's motion under Rule 26 and 56(d) [Dkt. #43] Dkt. #48 (case #20cv06316)

2.  March 26, 2021, United States Department of Justice, Office of Justice Programs, Officer of the Chief Financial Officer Audit Report (Dkt. #20-2) (case #22cv03861)

3.  On June 8, 2021, the District Court granted DOJ motion to dismiss with prejudice [Dkt. #31] Dkt. #64 (case #20cv06316)

4.  On November 14, 2022, Nance filed his Memorandum of Law in Opposition to Defendants Motion to Dismiss or in the Alternative Summary Judgment referencing Rule 26 and 56(d). (Dkt. #11)

5.  Nance filed his Motion Pursuant to Rule 26 and 56(d) on November 14, 2022 (Dkt. #11-4)

6.  Nance filed his accompanying Affidavit/Declaration on November 14, 2022 required for a Rule 26 and 56(d) motion. (Dkt. #11-5)

7.  January 9, 2024, Judge LaShonda Hunt Final Decision. (Dkt. #38-41) (case #22cv03861)

## APPENDIX

1.  On February 4, 2021, the District Court denied pro se Nance's motion for sanctions [Dkt. #26], Dkt. #13 (case #20cv06316)

2.  On June 9, 2021, the District Court denied pro se Nance's motion to supplement original complaint [Dkt. 60 & 62] Dkt. #65 (case #20cv06316)

3.  On June 15, 2021, the District Court denied pro se Nance's motion to stay proceedings [Dkt. #66] Dkt. #68 (case #20cv06316)

4.  August 17, 2021, the District Court ruled in favor of the government officials, Dkt. #96 (case #20cv06316)

5.  December 13, 2021, the District Court corrected an order dismissing case #20cv06316 by a Magistrate Judge who was not part of the case. (Dkt. #114) (case #20cv06316)

6.  January 9, 2024, Judge LaShonda Hunt Final Decision. (Dkt. #38-41) (case #22cv03861)

7.  November 29, 2023, Nance Response to Defendant's Motion to Dismiss or Alternatively for Summary Judgment. (Dkt. 35) (case #22cv03861)

8.  November 29, 2023, Nance FRCP 56 and L.R. 56.1(b)(1)(2)…(Dkt. #35-1) (case #22cv03861)

9.  November 29, 2023, Nance Statement of Additional Material Facts. (Dkt. #35-2) (case #22cv03861)

10. November 29, 2023, Nance Memorandum of Law…(Dkt. #35-3) (case #22cv03861) 12. November 29, 2023, Affidavit of Fred L Nance Jr…(Dkt. #35-4) (case #22cv03861)

11. November 29, 2023, Nance Motion Pursuant to Rule 26 and 56(d)…(Dkt. #35-5) (case #22cv03861)

12. November 29, 2023, Table of Exhibits…(Dkt. #35-6) (case #22cv03861)

13. January 11, 2024, Minute Entry before Magistrate Judge Beth W. Jantz regarding settlement discussions with EMAGES and Hattie Wash in case #20cv06316. (Dkt. #158)

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| FRED L. NANCE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20 C 6316 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| UNITED STATES DEPARTMENT | ) | |
| OF JUSTICE, BUREAU OF | ) | |
| ASSISTANCE, OFFICE OF JUSTICE | ) | |
| PROGRAMS, EMAGES, INC., | ) | |
| HATTIE WASH, and | ) | |
| THOMAS BRADLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Believing he had been squeezed out of a grant for having blown a whistle, plaintiff Fred L. Nance filed this suit against the government and three private defendants. Before the Court are two motions, one filed by the private defendants and one by the government defendants. For the reasons set forth below, the Court grants the government's motion and grants in part and denies in part the private defendants' motion.

## I.     BACKGROUND

The following facts are from plaintiff's complaint, and the Court takes them as true for purposes of the motions to dismiss.

Plaintiff Fred L. Nance ("Nance"), who has a Ph.D. in human services, is employed by C.L.I.C.K. Services, NFP, where he is President and Chief Executive Officer. (Complt. p. 5). Plaintiff was involved with the three private defendants in connection with a federal grant, namely #2018-CY-BX-0025 (the "Grant"). Defendant Hattie Wash ("Wash"), who is the

President and CEO of EMAGES, Inc., was the fiduciary partner on the Grant, and defendant Thomas Bradley ("Bradley") was the certified public accountant for the Grant.

The Grant came about in the fall of 2018. In May of that year, plaintiff and Wash had submitted a proposal under the Second Chance Act Comprehensive Community-based Adult Reentry Program. In September 2018, Wash and plaintiff learned they had been awarded the Grant, which would run from October 1, 2018 through September 20, 2021.

Plaintiff and Bradley then participated in an online training program on financial management. There, plaintiff learned that grant awardees were expected to ensure that they did not draw down more federal funds than they could spend within the following ten days. By February 2020, defendants were approved to draw down federal funds for the Grant.

Plaintiff quickly grew concerned about how the funds were being drawn down. On or about February 26, 2020, plaintiff received a copy of the monthly drawdown and learned that Wash had drawn down funds to pay Dorothy Collins, who was no longer working on the Grant. Plaintiff later noticed that Wash had also drawn down funds on March 30, 2020 to pay Dorothy Collins. Plaintiff complained to Wash, who told him to stay in his own lane. Plaintiff complained to Bradley, who said he would not discuss the matter except in a meeting with both plaintiff and Wash.

Plaintiff was not through complaining. Plaintiff next complained to a member of Congress. Then, on April 17 or 18, 2020 (plaintiff uses both dates at different places in his complaint), plaintiff sent the first of three of what he describes as whistleblower complaints. Specifically, plaintiff wrote a letter addressed to the Bureau of Justice Programs and stated, among other things:

> I want to report possible fraud or misappropriation of funds regarding Grant #2018-CY-BX-0025. . . .

* * *

> The reasoning for writing this report at this time is because of what I discovered
> in April of 2020 and having working knowledge of the event being described. I
> am not part of any fraudulent scheme. I received a copy of our Second Chance
> Act drawdown report, dated March 30, 2020, which listed Dorothy Collins, a
> clerk who resigned on or about January 16, 2020. When I inquired of Dr. Wash
> about drawing down monies for someone who did not work for the program, she
> insulted and demeaned me as she stated I knew nothing about accounting.

[Docket 33-6].[1]

On August 21, 2020, Wash told plaintiff (by email) that she was willing to give up the

Grant on account of plaintiff's whistleblowing complaints. At some point (the date is not clear

from plaintiff's complaint), Wash gave back the Grant and told the Department of Justice and the

Bureau of Prisons that she was giving it back due to the coronavirus pandemic.

On August 28, 2020, plaintiff submitted what he labels his second whistleblower

complaint. Specifically, plaintiff sent to the Department of Justice's Office of Inspector General

a letter in which he stated, in relevant part:

> Dr. Nance receives a copy of the drawdown every month. On January 21st,
> February 26th, and March 30, 2020 Dr. Wash drew down funds for a person who
> was not employed. The person, Dorothy Collins resigned on the 1st week of
> January 2020. When I brought this issue to Dr. Wash she threatened me with
> giving up the grant if I told our Grant Manager. I informed the Grant Manager
> and Mr. Andre Bethea, Senior Policy Advisor for the Second Chance Act. I
> informed the Grant Manager and Mr. Bethea I was reporting this incident
> pursuant to the Whistleblower Act. I did not receive a response from them.

> We provide 7 groups with a trauma informed and mentoring curricula with this
> grant. When the COVID 19 crisis hit, we lost 2 groups, which were with the
> Cook County Jail and the Illinois Department of Corrections Special Needs Unit.
> We budgeted 10 mentors for $2800.00 a month. The groups we lost were
> budgeted for 4 mentors at around $500.00 a month. The payroll I submitted for

---

[1] Plaintiff alleges the existence of his three whistleblower complaints in his complaint. Plaintiff
did not attach these documents to his complaint, but the government filed the first two in
connection with its motion to dismiss. The Court may consider those documents without
converting the motion to dismiss to a motion for summary judgment, because they are referred to
in plaintiff's complaint and are central to plaintiff's claims. *Equal Employment Opportunity
Comm'n v. Concentra Health Services, Inc.*, 496 F.3d 773, 778 (7th Cir. 2007).

March $2600.00; April $2100.00; May $1800.00; June $2300.00; and July $2100.00. Dr. Wash drew down $2800.00 for each of these months. Dr. Wash drew down $1160.00 from October of 2019 thru July of 2020 for our evaluator without receiving an invoice from her. Dr. Wash would ask her for an invoice when we talked to her, which was after she drew down money for her. I informed Dr. Wash she could not draw down funds for a particular month and not spend everything she drew down. Dr. Wash told me to mind my business and stay in my lane. I reminded Dr. Wash, several times, I am peer reviewer and know how this system works. I informed her there can be no money left over in her bank account. Dr. Wash continued to threaten me stating if I reported it she would give up the grant. I told her I would take it up.

I informed our Technical Assistant, Joseph Williams, providing him emails and documentation. Mr. Williams informed me via email he would send all of my documentation to the Grant manager and his higher ups. I informed our Grant Manager and Mr. Bethea. Dr. Wash continued to retaliate against me telling me I cannot supervise the Support Clerk for our Grant. Our Support Clerk's job description clearly states the clerk reports to me. This Support Clerk handles Dr. Wash's financial records.

On August 26, 2020 Dr. Wash submitted a GAN stating she wanted to take me off the Grant as one of the Point of Contact (POC). On August 28, 2020 our Grant Manager, Tracey Willis, approved Dr. Wash's GAN taking me off as POC. Taking me off as POC limits me from performing my duties. Dr. Wash retaliated against me for filing my complaints with our Grant Manager, the Technical Assistant, and Mr. Bethea. I have detailed emails and documents to support my complaint. I have been litigating for over 20 years. I am not a lawyer.

[Docket 33-8].

On September 13, 2020, plaintiff sent what he labels his third whistleblower complaint. (Complt. at p. 6). He did not attach the document to his complaint or include other details about his September 13, 2020 complaint.

Plaintiff alleges that once Wash gave back the Grant, plaintiff could no longer work on it. Plaintiff asserts that "all defendants" retaliated against him in violation of the National Defense Authorization Act, 41 U.S.C. § 4712, and 740 ILCS 174. Plaintiff also asserts that he "files suit" against the government defendants "under the FTCA," i.e., the Federal Tort Claims Act. (Complt. at p. 1).

The following facts are related to the government's motion for summary judgment.[2]

The parties dispute whether plaintiff filed an administrative complaint before filing this case under the Federal Tort Claims Act. The government put forth evidence that a search of its computerized database of administrative tort claims did not reveal any administrative claim by plaintiff. Plaintiff, who asserts that each of his whistleblower complaints was an administrative tort claim, submitted evidence that, on September 13, 2020, he submitted an online complaint (i.e., his third whistleblower complaint) to the United States Department of Justice, Office of the Inspector General. That complaint stated, among other things:

> Dr. Wash, and others, are retaliating against me for filing Whistleblower complaints. The retaliation prompting this 3rd Whistleblower complaint is Dr. Wash demanding I copy her on every email I send out to staff and our network partners **after** I sent an email on September 9, 2020 to her copying the OJP Grant Manager, Senior Policy Advisor, and Division Chief. As you will see in the emails and responses, I was glad she wanted to re-engage but she must respond/reply to my emails, if for no other reason having professional respect for me and the Grant. . . .
>
> During this Coronavirus episode and the Illinois Stay at Home Order, along with Dr. Wash not opening her facility for all staff and participants for this grant, I

---

[2] Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. *See McCurry v. Kenco Logistics Services, LLC*, 942 F.3d 783, 790 (7th Cir. 2019) ("We take this opportunity to reiterate that district judges may require strict compliance with local summary-judgment rules."). Where one party supports a fact with admissible evidence and the other party fails to controvert the fact with citation to admissible evidence, the Court deems the fact admitted. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of the duty to support the fact with admissible evidence. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). Furthermore, the Court does not consider facts that parties failed to include in their statements of fact, because to do so would rob the other party of the opportunity to show that the fact is disputed.

The Court notes that plaintiff requested, pursuant to Rule 56(d), an opportunity to take discovery before responding to defendant's motion for summary judgment. The Court denied the motion in open court, because the only relevant facts (namely, whether plaintiff had been a government employee and whether plaintiff had filed an administrative claim) were within the plaintiff's personal knowledge.

have been working from home as other staff of EMAGES and staff for this grant.
Dr. Wash has not issued a plan for opening her facility as required in Illinois so
all staff and participants will know we are in a safe environment, as she has
promised. . . .

I am in the protected class of individuals susceptible to the Coronavirus. Dr.
Wash is aware I had a heart attack in July of 2011; I have hypertension and
abdominal issues; I have a registered Emotional Support Animal (Oakley, 5-year
old Chihuahua), which I had before writing the proposal for this grant and which I
brought with me during the proposal writing processes and every day at work
when we received the grant on October 1, 2018; and I have a Doctor's prescribed
Nurse visiting me at home weekly as of July 31, 2020. Due to my blood pressure
levels and other issues contained in my Whistleblower complaints, I have shared
with my Nurse the trauma I am experiencing due to the harassment, intimidation,
and the nefarious behavior of Dr. Wash and others who may be encouraging her
behaviors. My Nurse's progress notes reflect the anxiety and trauma suffered
under this emotional distress.

[Docket 49-16 at 7-8]. At no point in the September 13, 2020 complaint does plaintiff request

money. [Docket 49-16 at 7-13].

It is undisputed that plaintiff has never been an employee of the Department of Justice.

## II. STANDARD

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P.

12(b)(6). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a

complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon

which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v.*

*Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but

mere conclusions and a "formulaic recitation of the elements of a cause of action" will not

suffice. *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a claim must be plausible.

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Allegations that are as consistent with lawful conduct as

they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that

"nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In considering a motion to dismiss, the Court accepts as true the factual allegations in the

complaint and draws permissible inferences in favor of the plaintiff. *Boucher v. Finance Syst. of*

*Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). Conclusory allegations "are not entitled to

be assumed true," nor are legal conclusions. *Iqbal*, 556 U.S. at 680 & 681 (noting that a "legal

conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory,

allegations that "'petitioners 'knew of, condoned, and willfully and maliciously agreed to subject

[him]' to harsh conditions of confinement"). The notice-pleading rule "does not unlock the

doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at

678-679.

Summary judgment shall be granted "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.

56(a).

## III.  DISCUSSION

### A.  Private defendants' motion

The three private defendants, EMAGES, Inc., Wash and Bradley, filed a joint motion.

#### 1.  Bradley

Defendant Bradley argues that plaintiff's claims against him should be dismissed under

Rule 12(b)(6) of the Federal Rules of Civil Procedure, because plaintiff has not alleged that

plaintiff was Bradley's employee or that Bradley was plaintiff's employer.

Bradley's point is well taken. Plaintiff brings Counts I and II under the National Defense

Authorization Act (NDAA), 41 U.S.C. § 4712. That statute states, in relevant part:

> An *employee* of a contractor, subcontractor, grantee, or subgrantee or personal service contractor *may not be discharged, demoted, or otherwise discriminated against* as a reprisal for disclosing to a person or body described in paragraph (2) information that the *employee* reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of federal funds . . .

41 U.S.C. § 4712(a)(1) (emphasis added). The plain language of the statute makes clear that *only* an *employee* has a claim under that provision. The statute does not, by its terms, extend its protection to an independent contractor, and the Court is not aware of any case that held the statute's protections extend to non-employees. Plaintiff does not allege that he is an employee of Bradley. Instead, plaintiff alleges in his complaint (Complt. at p. 5) and confirms in his brief [Docket 51-1 at 5] that he is an employee of C.L.I.C.K Services, NFP.

Nor does plaintiff allege that Bradley is his employer. What plaintiff alleges about Bradley is that Bradley is an independent contractor of EMAGES. [Docket 51-1 at 12]. Even if plaintiff had alleged himself to be an employee of EMAGES (which he did not), he still could not sue Bradley without alleging that Bradley had the power to discharge, demote or otherwise discriminate against him. *Delebrau v. Danforth*, 743 Fed. Appx. 43, 44 (7th Cir. 2018) ("The Oneida Housing Authority is Delebrau's employer, but she sued only its employees in their personal capacities. The statute does not reach them because in the *personal* capacities they cannot discharge, demote, or discriminate in employment."). Plaintiff has not alleged (plausibly or otherwise) that he is Bradley's employee or that Bradley is his employer. Accordingly, Counts I and II are dismissed without prejudice as to Bradley.

In Count III, plaintiff asserts a claim under the Illinois Whistleblower law. That statute provides:

> An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation.

8

740 ILCS 174/15(b). Under the statute, employer is defined as "any individual, sole proprietorship, partnership, firm, corporation, association, and any other entity that has one or more employees in this State . . .; and any person acting within the scope of his or her authority express or implied on behalf of those entities in dealing with its employees." 740 ILCS 174/5. That definition leaves room for individual liability under the statute when the individual is acting within the scope of authority on behalf of an employer.

Plaintiff, though, has not alleged that Bradley was acting on behalf of plaintiff's employer, so this claim, too, must be dismissed for failure to state a claim. Count III is dismissed without prejudice as to defendant Bradley.

In Count IV, plaintiff asserts a claim for retaliation. Under Illinois law, "an *employer* may discharge an *employee*-at-will for any reasons or for no reason . . . except for when the discharge violates a clearly mandated public policy." *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill.2d 12, 19 (Ill. 1998) (emphasis added) (quoting *Barr v. Kelso-Burnett Co.*, 106 Ill.2d 520, 525 (Ill. 1985)). Bradley argues that such claims can be made only against an employer, and the Court agrees. *Buckner*, 182 Ill.2d at 21 ("Logically speaking, only 'the employer' has the power to hire or fire an employee. Obviously, an agent or employee may carry out that function on the employer's behalf, but it is still the authority of *the employer* which is being exercised. If the discharge violated public policy, it is the employer who is rightly held liable for damages."). Because plaintiff has not alleged (plausibly or otherwise) that Bradley was his employer, Count IV is dismissed without prejudice as to Bradley.

In Count V, plaintiff asserts a claim for "hostile environment." Plaintiff clarifies in his brief [Docket 51-1 at 18-19] that he brings this claim under Title VII of the Civil Rights Act of 1964. The problem with this claim, again, is that plaintiff has not alleged that Bradley was his

employer. Plaintiff can bring a Title VII claim against only an employer. Supervisors and co-workers are not liable under Title VII. *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995) ("[A] supervisor does not, in his individual capacity, fall within Title VII's definition of employer[.]"); *see also Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 930 (7th Cir. 2017) ("[T]here is no individual liability under Title VII."). Accordingly, Count V is dismissed without prejudice as to Bradley.

Finally, in Counts VI and VII, plaintiff claims emotional distress and special damages, respectively. As Bradley points out, these are prayers for relief, not causes of action. Because plaintiff has not stated a claim against Bradley, these prayers for relief, too, are dismissed as to Bradley.

For these reasons, plaintiff's claims against Bradley are dismissed without prejudice and with leave to amend.

### 2. Wash and EMAGES, Inc.

Wash and EMAGES, Inc. move, pursuant to Rule 12(e), for a more definite statement. Rule 12(e) of the Federal Rules of Civil Procedure allows a party to "move for a more definite statement of a pleading" when that pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed.R.Civ.P. 12(e).

In their motion, Wash and EMAGES, Inc. argue that plaintiff's complaint was vague, because it seemed to be alleging both that plaintiff was an employee of Wash and EMAGES, Inc. and also that he was not an employee of Wash and EMAGES, Inc. In response, plaintiff "state[d], emphatically, that he is an employee of C.L.I.C.K. Services, NFP." (Plf. Brief at 28/Docket 51-1 at 28). Plaintiff also said, "Plaintiff does not claim defendants . . . EMAGES,

Inc, Hattie Wash, or Thomas Bradley terminated his employment as related to an

employee/employer relationship." (Plf. Brief at 5/Docket 51-1 at 50).

Given those statements, Wash and EMAGES, Inc. replied that their motion for more

definite statement is moot (which is to say, they already have the clarification they need).

Accordingly, that portion of the motion is denied as moot. Wash and EMAGES, Inc. request

leave to file a motion to dismiss (now that they understand plaintiff's claims). Leave is granted:

these defendants may file a motion to dismiss, but they should wait until *after* plaintiff files an

amended complaint.

### B.    Government's motion

#### 1.    Exhaustion

The government argues that plaintiff's FTCA claim must be dismissed, because plaintiff

failed to exhaust his administrative remedies. Failure to exhaust is generally an affirmative

defense. *Jones v. Bock*, 549 U.S. 199 (2007).[3] A plaintiff need not plead around an affirmative

defense, and the Court may not dismiss under Rule 12(b)(6) on the basis of an affirmative

defense unless the plaintiff alleges, and thus admits, the elements of the affirmative defense.

*Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014);

*United States Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003). The

government seeks dismissal or, in the alternative, summary judgment.

---

[3]The exhaustion requirement of the Federal Tort Claims Act is a limitation on the waiver of
sovereign immunity. It is not clear that it is a true affirmative defense, around which a plaintiff
need not plead. *Compare Chronis*, 932 F.3d 544 (dismissing for failure to exhaust); *with Gray v.
United States*, 723 F.3d 795, 798 & 799 n. 1 (7th Cir. 2013) (describing exhaustion as "a
condition on the government's waiver of sovereign immunity" and as an "affirmative defense").
The court need not decide, because the outcome is the same whether the claim is dismissed under
Rule 12(b)(6) or 56.

Title 28 U.S.C. § 2675(a) provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of an employee of the Government while acting within the scope of his office or employment, *unless the claimant shall have first presented the claim to the appropriate Federal agency in writing* and sent by certified or registered mail.

28 U.S.C. § 2675(a) (emphasis added). By regulation, a claim is "deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, *accompanied by a claim for money damages in a sum certain* for an injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident . . ." 28 C.F.R. § 14.2(a); *see also Kanar v. United States*, 118 F.3d 527, 530 (7th Cir. 1997) ("[W]e treat 'claim' as a statutory term that needs a definition, and we see no reason why that definition may not come from a regulation issued under statutory authority."). A claimant need not "comply with 'every jot and tittle'" as "long as the proper agency had the opportunity to settle the claim for money damages before the point of suit[.]" *The Smoke Shop, LLC v. United States*, 761 F.3d 779, 787 (7th Cir. 2014). "[A] claimant who *neither* makes it clear that she is demanding money from the agency *nor* says how much she is demanding thwarts the settlement process envisioned by the FTCA," and, thus, his claim must be dismissed. *Chronis v. United States*, 932 F.3d 544, 547 (7th Cir. 2019).

Here, the parties dispute whether plaintiff exhausted. The government has no record of receiving a proper claim. Plaintiff, for his part, argues that his three whistleblower complaints constituted claims under the FTCA. The Court cannot agree with plaintiff. Even assuming the appropriate agency had received those three documents in the appropriate manner, not one of those documents included a demand for money, let alone for a sum certain. Without that, none

of his letters qualifies as a claim under the FTCA, and plaintiff failed to exhaust his remedies before filing suit.

Accordingly, plaintiff's FTCA claim is dismissed.[4]

## 2. Remaining claims

The government moves to dismiss the remaining claims, because, among other things (like sovereign immunity), plaintiff has not alleged that the government was his employer. The Court agrees. As the Court explained above, an entity cannot be liable on those claims unless it was plaintiff's employer. Plaintiff has not alleged that, so the claims must be dismissed for failure to state a claim. Furthermore, as plaintiff notes in his brief, [Docket 49-2 at 46], plaintiff admitted in open court that he was not an employee of the Department of Justice. Thus, plaintiff cannot cure this defect by amendment. The remaining claims against the government are dismissed with prejudice.

---

[4] This dismissal is without prejudice to plaintiff's right to file an administrative claim with the appropriate agency, *see Chronis*, 932 F.3d at 549, to the extent the statute of limitations has not run. Plaintiff may not, however, replead the claim in this case.

## IV. CONCLUSION

For the reasons set forth above, the Court grants the government's motion [31] to dismiss. Plaintiff's FTCA claim is dismissed without prejudice (and without leave to amend). The remaining claims against the government are dismissed with prejudice. The Court grants in part and denies in part the private defendants' motion [40] to dismiss. The Court dismisses without prejudice all claims against defendant Bradley. Plaintiff is granted leave to file by July 9, 2021 an amended complaint against defendants Wash, EMAGES, Inc. and Bradley, should he so choose. Defendants' deadline to answer or otherwise plead is August 6, 2021.

SO ORDERED.                                    ENTERED:  June 8, 2021

_____
JORGE L. ALONSO
United States District Judge

14

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Fred L. Nance, Jr.,

|  |  |
|---|---|
| Plaintiff, | Case No. 22 C 3861 |
| United States, *et al.*, | Hon. LaShonda A. Hunt |
| Defendants. |  |

## ORDER

Self-represented Plaintiff Fred L. Nance, Jr. sued the federal government and several agencies, officials, and employees (the "Government Defendants") for various claims arising from the termination of a grant. After the Court dismissed his first complaint for failure to state a claim, Nance filed an amended complaint [20]. Before the Court is the Government Defendants' second motion to dismiss or alternatively for summary judgment [27]. For the reasons stated below, the motion [27] is granted.

## STATEMENT

The Court presumes familiarity with its August 14, 2023 memorandum opinion and order [19] dismissing the claims in Nance's original complaint arising under the Federal Tort Claims Act without prejudice and all other claims with prejudice. That factual background and analysis is incorporated in this ruling.

Briefly, Nance essentially alleges that he worked for EMAGES, an organization that received a federal grant under the Second Chance Program, and in 2020, he reported perceived fraud and misappropriation of $880 paid to an employee not on the grant. According to Nance, EMAGES requested that the grant be terminated under the pretext of financial difficulties caused by, among other things, the pandemic, but the real reason for requesting grant termination was his "whistleblowing" activity. The grant was terminated, and thus Nance lost his job. Subsequently, Nance's application to serve as a peer reviewer of grant applications under the same program was denied. Nance filed an administrative claim with the Department of Justice in connection with these events, which was denied as not compensable. Nance believes that both the termination of the grant and the denial of his peer review application were actions taken in retaliation for his reporting of the perceived fraud and misappropriation.

In its prior order, the Court explained that Nance had not sufficiently alleged negligence to support an FTCA claim and also raised certain intentional torts that are barred by statute. The Court explained that Nance a final opportunity to try to amend his complaint, which he has done. Reading the amended complaint liberally, as the Court must for *pro se* litigants, Nance appears to be raising five "claims" under the FTCA: (1) intentional infliction of emotional distress (IIED); (2) conspiracy; (3) abuse of process; (4) defamation; (5) misrepresentation and deceit. In addition, the complaint lists claims for: (6) violation of the Whistleblower Protection

1

Act (WPA); and (7) retaliation. Finally, the complaint briefly refers to maintaining a First Amendment *Bivens* claim against federal employees involved with grant administration. FAC at 21. Nance seeks $500,000 in monetary damages; approval of a $750,000 grant for his organization; reprimand of employees involved; and letters of support and apology.

The Government Defendants filed a second Motion to Dismiss or Alternatively for Summary Judgment [27], along with a memorandum in support thereof [28] and statement of facts (SOF) [29]. Nance filed a response to the motion [35], which contains a response to the Government Defendants' SOF [35-1], a statement of additional material facts (SOAF) [35-2], a memorandum in opposition to the motion [35-3], an affidavit supporting the need for discovery [35-4], a motion for early discovery [35-5], and voluminous exhibits [35-6 to 35-8]. The Government Defendants filed a response to Nance's SOAF [36] and a reply in support of the motion [37]. After reviewing these materials and considering any arguments raised at the hearing, the Court concludes that the amended complaint fails to state an FTCA claim.

The FTCA operates as a waiver the government's sovereign immunity as to recognized tort causes of action. *Feres v. United States,* 340 U.S. 135 (1950). District courts have exclusive jurisdiction of civil actions on claims against the United States, for money damages for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b)(1);*see also* 28 U.S.C. § 2674. However, there are express exceptions to the FTCA for:

> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.
>
> ***
>
> (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights[.]

28 U.S.C. § 2680(a) (discretionary functions) & (h) (intentional torts).

First, Nance has not stated a negligence claim in the amended complaint. In Illinois, "[t]o recover damages based upon negligence, a plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injury." *Krywin v. Chicago Transit Auth.,* 238 Ill.2d 215, 225 (2010). The amended complaint appears to abandon any theory of negligence to support the FTCA claim. Neither the complaint nor Nance's brief in opposition to the pending motion articulate a duty owed by the Government Defendants to Nance that is analogous to a duty owed by a private person in a similar

factual situation. In the prior ruling, the Court specifically explained to Nance that identifying a duty along with specific facts to support causation would be required to properly allege an actionable negligence claim. (Mem. Op. & Order, Dkt. No. 19 at 11). Once again, Nance has not satisfied that requirement. Because Nance has failed to articulate (let alone allege facts that give rise to) a duty that would support a negligence claim against a private person under like circumstances, negligence cannot serve as the basis for the FTCA claim.

Second, it is questionable whether IIED is even a tort recognized under the FTCA or excluded as an intentional tort under 28 U.S.C. § 2680(h). *Christopher v. Harbury*, 536 U.S. 403, 420 n.19 (2002) (expressing doubt whether an IIED claim could be maintained under the FTCA) (citing 28 U.S.C. § 2680(h)). If it is, the complaint would need to sufficiently allege a claim for IIED under Illinois law. *See Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010) (listing elements: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress."); *McGrath v. Fahey*, 126 Ill. 2d 78, 86 (1988) (IIED "does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'") (quoting Restatement (Second) of Torts § 46, cmt. d (1965)); *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (conduct must go beyond all bounds of decency and be considered intolerable in a civilized community).

Even if IIED is not excluded under 28 U.S.C. § 2680(h), Nance has not alleged facts to support the claim under Illinois law. There are no allegations of: "extreme and outrageous conduct"—rather, the allegations seem to reflect government bureaucrats doing their jobs as required; Defendant's knowledge of the consequences of their conduct on Nance; or of severe emotional distress—the only allegations remotely close on this point are the allegations concerning Nance's inability to find other work to pay for his house and car due to his age—that's not enough. Because Nance has failed to allege a plausible claim for IIED (and the tort is likely not even actionable under the FTCA), this too cannot serve as a basis for the FTCA claim.

Third, claims for abuse of process, defamation, and misrepresentation and deceit are expressly excluded from the FTCA under 28 U.S.C. § 2680(h). *See also Apampa v. Layng*, 157 F.3d 1103, 1104 (7th Cir. 1998) (FTCA barred suit for defamation); *see also McDonnell v. Cisneros*, 84 F.3d 256, 261 (7th Cir. 1996) ("The United States is not liable under the Tort Claims Act for defamation by its employees.").

Fourth, "[c]onspiracy is not an independent tort" under Illinois law, so where a complaint "fails to state an independent cause of action underlying [the] conspiracy allegations, the claim for conspiracy also fails." *Thomas v. Fuerst*, 345 Ill. App. 3d 929, 936 (1st Dist. 2004). Furthermore, "claims that have deceit or misrepresentation as one of their elements" cannot support an action under the FTCA. *Mendrala v. Crown Mortg. Co.*, No. 88 C 7386, 1990 WL 129602, at *2 (N.D. Ill. Aug. 28, 1990). Because none of the other claims asserted by Nance support an FTCA action, the conspiracy claim cannot stand alone.

Fifth, Nance's other claims under the Whistleblower Protection Act and for retaliation were previously dismissed with prejudice because they can only be asserted against an employer, which Nance has admitted the United States is not.

Finally, to the extent the amended complaint seeks to assert a First Amendment *Bivens* claim to support the FTCA cause of action, any such claim also must be dismissed with prejudice because constitutional tort claims are not cognizable under the FTCA. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994) (explaining state substantive law is the source of liability under the FTCA, so a federal constitutional claim cannot support it). In addition, because Nance claims that his constitutional rights have been violated through alleged retaliatory actions, the claim also fails on its own. *See Egbert v. Boule*, 596 U.S. 482, 499 (2022) (holding that there is no *Bivens* action for First Amendment retaliation).

Last, because the amended complaint fails to state a claim under the FTCA, the Court need not address whether the various categories of relief sought (e.g., increased monetary damages from the initial administrative claim; injunctive relief, etc.) would be permissible. Furthermore, Nance's request for discovery is moot.

Nance previously attempted, and failed, to state a proper claim under the FTCA. He was afforded a final opportunity to amend the complaint to include the necessary facts and failed to do so. Moreover, it appears that further attempts would be futile. Therefore, the dismissal is with prejudice. *See Jain v. Butler Sch. Dist. 53*, 303 F. Supp. 3d 672, 683 (N.D. Ill. 2018) (citing *Agnew v. NCAA*, 683 F.3d 328, 347 (7th Cir. 2012) (leave to amend need not be granted when a party has had multiple opportunities to state a claim); *Bogie v. Rosenberg*, 705 F.3d 603, 608, 616 (7th Cir. 2013) (dismissal with prejudice is appropriate when amendment would be futile)).

**DATED**: January 9, 2024                    **ENTERED:**

LaShonda A. Hunt
United States District Judge

4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Fred L. Nance, Jr.,

Plaintiff(s),

v.

United States, *et al.*,

Defendant(s).

Case No. 22 C 3861
Hon. LaShonda A. Hunt

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐     in favor of plaintiff(s)
and against defendant(s)
in the amount of $     ,

       which ☐ includes     pre–judgment interest.
             ☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☐     in favor of defendant(s)
and against plaintiff(s)

Defendant(s) shall recover costs from plaintiff(s).

---

☒     other:   Judgment is entered in favor of defendants United States, *et al.,* and against plaintiff
Fred L. Nance, Jr. Plaintiff's amended complaint was dismissed with prejudice.

---

This action was *(check one)*:

☐ tried by a jury with Judge     presiding, and the jury has rendered a verdict.
☐ tried by Judge     without a jury and the above decision was reached.
☒ decided by Judge LaShonda A. Hunt on a motion.

Date:   1/9/2024

Thomas G. Bruton, Clerk of Court

Carolyn Hoesly, Deputy Clerk