**IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

U.S.C.A. – 7th Circuit
RECEIVED
APR 15 2024

**No. 24-1181**

| | |
|---|---|
| FRED L. NANCE JR. ) | |
| ) | Appeal from the United States District Court |
| PLAINTIFF-APPELLANT ) | for the Northern District of Illinois |
| ) | |
| vs. ) | No. 20 C 6316 |
| ) | No. 22 C 3861 |
| U.S. DEPARTMENT OF JUSTICE, et al. ) | |
| ) | LaShonda A. Hunt, District Judge |
| DEFENDANT-APPELLEES. ) | |

**PLAINTIFF-APPELLANT RESPONSE TO DEFENDANT-APPELLEES MOTION TO DISMISS APPEAL OF CASE NO. 20 C 6316 AND FOR SUMMARY AFFIRMANCE OR TO RESET BRIEFING SCHEDULE FOR CASE NO. 22 C 3861**

Now comes, Pro se Plaintiff-Appellant (hereinafter, "Nance") responding to Defendant-Appellees (hereinafter "United States) Motion to Dismiss. EMAGES, Inc and Hattie Wash (hereinafter "Hattie") are co-conspirators in case #20 C 6316, which is valid to bring in these Appellate processes. Nance is a Whistleblower without the protections of the Act according to the United States. Nance was denied due process when the District Court refused to address his motion pursuant to Rule 26 and 56(d), which was filed as part of Nance's answer to the United States motion to dismiss or in the alternative summary judgment. The District Court violated my 1st Amendment right to access the court.

This Appellate Court should not dismiss case #20 C 6316. This Appellate Court dismissed Nance's appeal in case #20 C 6316 for lack of jurisdiction due to no final order having been issued for the case, stating, in part, "…Generally, an appeal may not be taken in a civil case until a final judgment disposing of all claims against all parties is entered on the district court's civil docket pursuant to Fed. R. Civ. P. 58. See *Alonzi v. Budget Construction Co.*, 55 F.3d 331,

Page 1 of 15

333 (7th Cir. 1995); See *Cleaver v. Elias*, 852 F.2d 266 (7th Cir. 1988)." (No. 21-2161, August 4, 2021) A final order did not come down until Judge LaShonda Hunt dismissed the case(s), in its entirety, on January 9, 2024. (Dkt. #40) The United States has not filed its response to Nance's appeal, which would now be untimely and any future response filing to Nance's appeal from the United States should be dismissed.

The United States filing motions in lieu of briefs, a form of self-help extension, has become increasingly common but is not authorized by any rule, either national or local. It is fine to file a motion to affirm, to dismiss for want of jurisdiction, to transfer to another circuit, and so on; the problem lies in the belief that any motion automatically defers the deadline for filing the brief. A brief must be tendered when due. If events justify a last-minute motion concerning jurisdiction, venue, sanctions, or any other subject, then that motion may accompany the brief; a motion is not a substitute for a brief. *Ramos v Ashcroft*, 371 F.3d 948 (7th Cir. 2004) Unless the United States files a brief on the merits, Nance's brief should be decided on Nance's brief alone. Fed. R. App. P. 31(c).

In *Andreea Gociman, et al. vs Loyola University of Chicago*, No 21-1304, Argued December 7, 2021 and Decided July 25, 2022, this 7th Circuit Appellate Court stated, "We review the grant of a motion to dismiss for failure to state a claim de novo. *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1005 (7th Cir. 2021) (citation omitted). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In evaluating the sufficiency of the complaint, we consider documents

integral to the complaint that might aid in determining whether a plaintiff is entitled to relief. *Phillips*, 714 F.3d at 1020 (citation omitted). The bar to survive a motion to dismiss is not high. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge [that] 'recovery is very remote and un-likely.'" *Twombly*, 550 U.S. at 556. Nance's complaint and brief satisfies *Ashcroft v. Iqbal and Bell Atl. Corp. v. Twombly*.

Pro se pleadings are held to less exacting standards than those prepared by counsel and are to be liberally construed, *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam); *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). This Appellate Court too must construe pro se filings liberally, *Whitford v. Boglino*, 63 F.3d 527, 535 n. 10 (7th Cir. 1995) (per curiam), but still we must be able to discern cogent arguments in any appellate brief, even one from a pro se litigant. Rule 28 of the Federal Rules of Appellate Procedure requires a brief must contain an argument consisting of more than a generalized assertion of error, with citations to supporting authority. Fed. R. App. P. 28(a)(9)(A); *Mathis v. New York Life Ins. Co.*, 133 F.3d 546, 548 (7th Cir. 1998) (per curiam); *United States ex rel. Verdone v. Circuit Court*, 73 F.3d 669, 673 (7th Cir. 1995) (per curiam). Plaintiff-Appellant has met this burden.

A refusal to construe pleadings flexibly, as required under *Haines*, is tantamount to withdrawal of that meaningful opportunity. For instance, an otherwise meritorious claim could be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. The very point of the *Haines* approach is to determine if, when a pro se civil Nance has not said

the "magic words" (or has said the wrong words), a cause of action exists.[1] Even though the number of meritorious pro se complaints may be small, it is essential that these complaints be recognized.[2] The protection of federal court litigants' interest in a meaningful opportunity to be heard while litigating is a central aspect of procedural due process. (Nance Brief, pp. 11-12)

Once a protected interest is identified, courts must then determine how much process is due the civil pro se litigant. The Supreme Court in *Mathews v. Eldridge* promulgated its test for determining the procedural protections to which a litigant is entitled by due process."[3] This test requires consideration of three factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[4]

The pro se civil litigant's constitutionally protected interest is in a meaningful opportunity to be heard. Obviously, valuation of this interest includes the value of the underlying substantive claim which he may be either prevented or deterred from bringing. It also includes the value of this opportunity itself.[5] A meaningful opportunity to be heard is a core due process value. As discussed above, if one cannot proceed at all, one clearly has lost more than simply the damages,

---

[1] See, e.g. *Hansen v. May*, 502 F.2d 728 (9th Cir. 1974) (pro se Nance's claim, styled one for "habeas corpus," should have been treated by lower court as stating a claim under § 1983). Some argue that, carried too far, the Haines approach will find a cause of action where none exists. See Justice Rehnquist's dissent in *Hughes v. Rowe*, 449 U.S. 5, 22-23 (1980).
[2] Westling and Rasmussen, 16 Loy.U.Chi.L.J. at 275, 303 (cited in note 25).
[3] 424 U.S. 319 (1976).
[4] Id. at 335.
[5] See Zeigler and Hermann, 47 N.Y.U.L.Rev. at 205-06 (cited in note 2) (pro se litigants deserve fair and efficient screening of their claims).

or the injunctive relief sought because the meaningful opportunity to be heard is itself a protected interest.[6] (Nance Brief, pp. 12-13)

The United States address issues in their Motion to Dismiss suggesting this is how they plan to address them in their brief, whenever they file it. Nance should not have to burden this court with redressing the contents of his brief just because the United States files an untimely or nefarious motion to dismiss. Nevertheless, Nance restates his timely filed brief as if fully stated herein to address the United States motion to dismiss and untimely filed brief.

Hattie, by and through her attorney in case #20 C 6316, has requested to enter settlement agreement for their part in the case. Hattie brought the "Big" lie that the United States defendants accepted without investigation violating Nance's Whistleblower rights. Even though Hattie will not admit guilt, only the guilty settle claims.

The United States withheld vital information from the District Court in case #22 C 3861 that would have forced discovery. The United States defendants and their attorney knew Hattie lied to them about why she was terminating the grant, which triggered the violation of the Whistleblower Act. Nance's employment was terminated. Hattie lied to the United States in a retaliatory fashion due to Nance reporting misappropriation of funds and fraud, which was proven by the Department of Justice before Judge Alonso (case #20 C 6316) held a hearing and decided to dismiss Nance's claims. Nance hangs his hat on these facts, which should be under review by this Appellate Court and not circumvented by the underhandedness of the United States Motion to Dismiss. As Nance remembers, a motion to dismiss accompanies that all facts are true.

---

[6] See section III.B.1.

Nance was an employee of Hattie. Hattie received a Second Chance Act grant from the United States Department of Justice, Bureau of Justice Assistance, Office of Justice Programs. NDAA et seq., and 41 U.S.C. §4712 protect a Whistleblower and prohibits government contractors and grantees from subjecting their employees to reprisal for disclosing gross mismanagement, waste, and other harms or wrongdoing relating to federal contracts or grants.

An employee of a contractor, subcontractor, grantee, or subgrantee or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of gross mismanagement of a federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant. 41 U.S.C. § 4712(a)(1). NDAA makes it illegal for an employee of a federal contractor, subcontractor, grantee, or subgrantee to be discharged, demoted, or otherwise discriminated against for making a protected Whistleblower disclosure. In 2016, Congress amended the program to make those protections permanent.

*DHS vs. MacLean* (2015) states, "Federal law generally provides whistleblower protections to an employee who discloses information revealing "any violation of any law, rule, or regulation," or "a substantial and specific danger to public health or safety." 5 U. S. C. §2302(b)(8)(A). Congress passed the whistleblower statute precisely because it did not trust agencies to regulate whistleblowers within their ranks.

This Appellate Court is cognizant of the unique challenges facing pro se litigants and are generally disposed toward providing a litigant the benefit of appellate review. But we must also

insist on compliance with procedural rules such as Rule 28 to promote our interest in the uniform administration of justice. *McNeil v. United States*, 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("[I]n the long run, experience teaches that strict adherence to procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." (internal quotations and citation omitted)); *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) ("[R]ules apply to uncounseled litigants and must be enforced."). Rule 28 applies equally to pro se litigants, and when a pro se litigant fails to comply with that rule, we cannot fill the void by crafting arguments and performing the necessary legal research, see *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990). Indeed, we have previously warned that pro se litigants should expect that noncompliance with Rule 28 will result in dismissal of the appeal. *McCottrell v. EEOC*, 726 F.2d 350, 351 (7th Cir. 1984) Plaintiff-Appellant has complied with the FRCP. Plaintiff-Appellant's adherence to the Federal Rules of Civil Procedure are not challenged here. Rule 28 also applies to the United States.

The United States attempts to circumvent Rule 28 and the legal processes, as Nance describes in his brief. The United States defendants want this Appellate Court to deprive Nance the right to be heard and access Appellate relief as the District Court did. What the United States should do is argue their issues in a responding brief if they have not lost the right to challenge Nance's brief due to missing their deadlines for filing a responsive brief. The United States defendants want to thwart Nance's right to access the Court and the judicial processes of Appellate procedure.

Nance should and deserves to have a full briefing from the United States and this Appellate Court. Nance has listed in his brief how Judge Jorge Alonso denied his discovery requests. Discovery would have uncovered the United States knowledge that Hattie were found

to have been commingling Federal funds as Nance listed in his Whistleblower complaint and brief.

On March 26, 2021, the Department of Justice, Bureau of Justice Programs, Office of the Chief Financial Officer sent a letter to Hattie Wash stating, in part,

> "…Based on our review…these procedures did not clearly define areas of responsibilities relative to federal grants management, and did not include specific provisions for tracking grant expenditures by approved budget categories…(p.2) Based on an analysis of the EMAGES financial activities, we noted that the EMAGES is commingling the grant 2018-CY-BX-0025 funds with other federal agencies' funds within their accounting system…(p.5) Based on a judgmental sample review of expenditures, we noted that the EMAGES was unable to fully support and justify the rational allocation method used to charge $800 in Other Cost to award 2018-CY-BX-0025…." (p.8) (Dkt. #20-2, pp.1-11)

This $800.00 is the monies Nance informed Hattie and the United States defendants via his Whistleblower complaints was a misappropriation of funds and fraud. Nance referenced a commingling of funds between federal and state funding. The United States defendants ignored Nance, terminating the grant and Nance's employment for being a Whistleblower. Nance has been a peer reviewer for the Department of Justice since 2009. Nance knew the policy for misappropriation of funds and fraud. Notwithstanding, counsel for the United States defendants, Kurt N. Lindland, had or should have known Nance's Whistleblower complaint(s) were true and covered it up. The Department of Justice, Bureau of Justice Programs, Office of the Chief Financial Officer report came out on March 26, 2021, which is before Judge Alonso made his decision to dismiss the case against the United States defendants on June 8, 2021. If this

Appellate Court rules in favor of the United States' motion to dismiss, it would surely be a miscarriage of justice.

**The District Court Case(s)**

Pro se Nance brought this action pursuant to the Whistleblower Protection under the National Defense Act of 2013, amended 2016; 10 U.S.C. § 2409; 41 U.S.C. § 4712. (Nance Brief, p.1) This is a claim pursuant to the Whistleblower Act involving the Second Chance Act of 2007, which involves the policy of both Acts. (Nance Brief, p.2)

Nance originally filed suit against DOJ, EMAGES, Inc. (hereinafter, "EMAGES"), Hattie Wash (hereinafter, "Hattie") and Thomas Bradley (hereinafter, "Bradley") pursuant to the National Defense Authorization Act (hereinafter, "NDAA") Whistleblower Protections provisions of §827 and 828 of Pub. L. No. 112-239, 126 Stat. 1632 (2013), as amended by Pub. L. No. 114-261, 130 Stat. 1362 (2016), 10 U.S.C. §2409; 41 U.S.C. §4712; 5 U.S.C. §1221(e)(1).

On March 26, 2021, the Department of Justice, Bureau of Justice Programs, Office of the Chief Financial Officer sent a letter to Hattie stating, in part,

> "...Based on our review...these procedures did not clearly define areas of responsibilities relative to federal grants management, and did not include specific provisions for tracking grant expenditures by approved budget categories...(p.2) Based on an analysis of the EMAGES financial activities, we noted that the EMAGES is commingling the grant 2018-CY-BX-0025 funds with other federal agencies' funds within their accounting system...(p.5) Based on a judgmental sample review of expenditures, we noted that the EMAGES was unable to fully

support and justify the rational allocation method used to charge $800 in Other Cost to award 2018-CY-BX-0025...." (Nance Brief, p.6) (Dkt. #20-2, pp.1-11)

On June 8, 2021 the District Court states "...the Court grants the government's motion [31] to dismiss. Nance's FTCA claim is dismissed without prejudice (and without leave to amend). The remaining claims against the government are dismissed with prejudice...." (Dkt. #64) Nance's original suit was in the amount of $500,000.00 and reporting he was injured by the conspiracy and tortious actions of all defendants. (Nance Brief, p.3)

On June 8, 2021, Judge Jorge L. Alonso issued a Memorandum Opinion and Order (Dkt. #64) dismissing with prejudice all claims against the United States Department of Justice and its employees named above accept the FTCA claim; and continued all claims against EMAGES, Inc., Hattie Wash, and Thomas Bradley (20cv06316). (Nance Brief, p.6-7) United States defendants and their Attorney Kurt N. Lindland had a duty to report (Dkt. #20-2, pp.1-11) to the District Court before the Court's June 8, 2021 hearing. Judges Alonso and Hunt denied Nance discovery against DOJ and the United States, respectively. (Nance Brief, p.7) Thus, denying Nance access to court, violating Nance's 1st Amendment right to redress.

The Federal Rules of Civil Procedure allow a nonmovant, when faced with a motion for summary judgment, to ask the court to defer ruling on the motion, to allow it additional time to take discovery. The process is straightforward: a nonmovant must show the court "by affidavit or declaration" the specified reasons that prevent it from presenting facts essential to justify its opposition. See FRCP 56(d) The "affidavit or declaration" portion of the rule is not merely a suggestion, as failure to submit one justifies a district court's denying the request to take additional discovery, and ultimately, granting summary judgment in the absence of additional facts. That lesson was recently learned by the plaintiff in *Kallal v. CIBA Vision Corp.*, No. 13-

1786 (7th Cir. Feb. 24, 2015). This Seventh Circuit decision should remind practitioners to comply strictly with Rule 56(d) when asking the court to defer ruling on a summary judgment motion. Nance filed a Rule 56(d) motion and an affidavit requestion discovery. Judges Alonso and Hunt ignored Nance's request for discovery from the United States Defendants. (Nance Brief, p.8)

On November 14, 2022, Nance filed "Plaintiff Memorandum of Law in Opposition to Defendants Motion to Dismiss or in the Alternative Summary Judgment (Dkt. #11). Nance filed his Motion Pursuant to Rule 26 and 56(d) on November 14, 2022 (Dkt. #11-4). Nance filed his accompanying Affidavit/Declaration on November 14, 2022 (Dkt. #11-5). Judge Alonso still had this case. Judge Hunt inherited the case on June 2, 2023. Both Judges, Alonso and Hunt, ignored Nance's motions for discovery. Not only did Judge Hunt ignore Nance's Rule 26 and 56(d) motions, on August 14, 2023, she issued a Minute Order stating "...the Government Defendants' motion to dismiss is granted without prejudice as to the FTCA claim and with prejudice as to the remaining claims...If Nance is capable...." (Dkt. #18) (Nance Brief, pp. 8-9)

The District Court has violated Nance's 1st Amendment rights to due process, freedom of speech, freedom of expression and procedural due process rights. Nance references "Freedom of Speech and Freedom of Expression" due to Nance posting all of his litigation on social media since the early 2000s. District Court Judge Hunt inferred her feelings when reprimanding Nance for his redress of Attorney Kurt N. Lindland but not Attorney Kurt N. Lindland for the language he used to demean Nance in filings. (See Transcript for July 9, 2023)

The District Court has violated the basic principles for the discovery processes. Nance filed numerous documents demonstrating violations basic principles of law to how litigation proceeds, such as in case #22cv3861: Dkt. #11, 11-1, 11-2, 11-3, 11-4, 11-5 denying Nance

discovery from the United States. Judge Alonso, in case #20cv06316, allowed Nance discovery from defendant-appellees EMAGES and Hattie Wash "after" he dismissed the United States case on June 8, 2021. (Dkt. #64) (Nance Brief, p.9)

The information Nance received from the United States Department of Justice, Office of Justice Programs, Officer of the Chief Financial Officer during the discovery processes (Nance's Deposition) with EMAGES and Hattie Wash had to be known to the United States defendants. This finding supports Nance's Whistleblower Complaint and his request for Discovery from the United States pursuant to Rule 26 and 56(d). (Nance Brief, p.10)

The Federal Tort Claims Act (FTCA) allows Nance to bring certain state-law tort claims against the United States for torts committed by federal employees acting within the scope of their employment, provided that the plaintiff alleges six statutory elements of an actionable claim. See 28 U. S. C. §1346(b). The Federal Tort Claims Act (FTCA) allows Nance to bring certain state-law tort suits against the Federal Government. 28 U. S. C. §2674; see also §1346(b). (Nance Brief, p.22) In order to be eligible to make a FTCA claim, there are four key things you must prove: (1) An employee or agent of the federal government harmed you. (2) The employee's acts or omissions were negligent or intentionally wrongful, (3) the employee was acting within the scope of their duties at the time of the harm, and (4) you were hurt as a direct result of the negligence of the employee. (Nance Brief, p.27)

The District Court(s) denied Nance Discovery pursuant to Rule 26 and 56(d). Nance filed a timely Rule 26 and 56(d) to avoid summary judgment. Nance obtained evidence in furtherance of the conspiracy claim via a deposition by EMAGES and Hattie Wash, which affirms Nance's Whistleblower complaint and his legitimate claims, which Judges Alonso and Hunt dismissed with prejudice. (Nance Brief, p.29)

The Federal Tort Claims Act (FTCA) allows a plaintiff to bring certain state-law tort claims against the United States for torts committed by federal employees acting within the scope of their employment, provided that the plaintiff alleges six statutory elements of an actionable claim. See 28 U. S. C. §1346(b). The Federal Tort Claims Act (FTCA) allows a plaintiff to bring certain state-law tort suits against the Federal Government. 28 U. S. C. §2674; see also §1346(b). It also includes a provision, known as the judgment bar, which precludes "any action by the plaintiff, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim" if a court enters "the judgment in an action under section 1346(b)." §2676.

A claim is actionable if it alleges the six elements of §1346(b), which are that the claim be: "[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Ibid.* (quoting §1346(b)).

In *Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009) Count four, *Smith* asserted an FTCA claim against the United States for intentional infliction of emotional distress ("IIED"). The United States argued that, even though IIED is not one of the torts explicitly listed in § 2680(h), it is nevertheless excluded under that provision because the IIED claim "arises out of" one of the enumerated torts (Doc. 16). 28 U.S.C. § 2680(h). Specifically, the United States claims that the IIED claim is based on the incident where *Smith's* co-worker threw paper at her, meaning it arises out of assault and is therefore barred by § 2680(h) (Doc. 16). The Court

disagreed stating *Smith's* IIED claim appears to be based not only on the paper-throwing incident, but also on the harassment and retaliation that she allegedly suffered from her supervisor. Therefore, the IIED claim is based on conduct above and beyond the assault and consequently is not barred by that exception. Nance claims IIED in his causes of action.

Under Illinois law, to succeed on a claim for intentional infliction of emotional distress (IIED), a plaintiff must prove that: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen-El v. Cook Cty. Sheriff's Dept.*, 602 F.3d 852, 864 (7th Cir. 2010). Plaintiff was 71 years old when he was terminated. Is it not extreme and outrageous to take employment from a 71-year old?

Under the Illinois Whistleblower Act, "an employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation." 740 ILL. COMP. STAT. ANN. 174/20. There are two aspects to such a claim: (1) the refusal to participate; and (2) the violation of a statute, rule, or regulation. *Roberts v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 135 N.E.3d 891, 900–01 (Ill. 2019). Under Illinois common law, an employer may discharge an employee-at-will with or without cause. *Barr v. Kelso-Burnett Co.*, 106 Ill. 2d 520, 525 (1985). Courts have acknowledged, however, that an employer's ability to discharge an employee without cause in an oppressive manner could undermine a significant public policy. *Michael v. Precision Alliance Group, LLC*, 2014 IL 117376, ¶ 30.

To state a claim for retaliatory discharge, an employee must plead that (1) the employer discharged the employee, (2) the discharge was in retaliation for the employee's activities, and (3) the discharge violates a clearly mandated public policy. *Michael,* 2014 IL 117376, ¶ 31.

Nance's Whistleblower complaints to the United States defendants is what motivated Hattie to give the grant back.

To succeed in a retaliatory discharge claim, the public policy alleged by a plaintiff must be found in the state or federal constitutions and statutes and, when they are silent, in Illinois or federal case law. *Palmateer*, 85 Ill. 2d at 130; see *Wheeler v. Caterpillar Tractor Co.*, 108 Ill. 2d 502 (1985) (this court found a clearly mandated public policy enunciated in federal legislation and regulations, which were national in scope) a violation of the Whistleblower Act (740 ILCS § 174/1 et seq. (West 2014)).

The Whistleblower Act provides employees protection from an employer's retaliation for certain disclosures and refusals and prohibits policies that prevent an employee from disclosing information to a government agency that the employee reasonably believes violate a state or federal law, rule, or regulation. 740 ILCS 174/10, 15, 20, 20.1, 20.2 (West 2014). Plaintiff informed the United States defendants that if they allowed his employer, EMAGES, Inc., to give the grant back they (United States defendants) would be liable in violating the Whistleblower Act because plaintiff would lose his employment.

WHEREFORE, Nance respectfully request this Appellate Court deny United States Defendants Motion to Dismiss Appeal of Case No. 20 C 6316 and for Summary Affirmance or to Reset Briefing Schedule for Case No. 22 C 3861.

Respectfully submitted,

/s/Fred L. Nance Jr., Pro se plaintiff
17239 Evans Avenue
South Holland, Illinois 60473-3436
708-921-1395
frednance@clickservices.org

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

No. 24-1181

| | |
|---|---|
| FRED L. NANCE JR. ) | |
| ) | Appeal from the United States District Court |
| PLAINTIFF-APPELLANT ) | for the Northern District of Illinois |
| ) | |
| vs. ) | No. 20 C 6316 |
| ) | No. 22 C 3861 |
| U.S. DEPARTMENT OF JUSTICE, et al. ) | |
| ) | LaShonda A. Hunt, District Judge |
| DEFENDANT-APPELLEES. ) | |

**NOTICE OF FILING**

Kurt N. Lindland
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-4163
kurt.lindland@usdoj.gov

U.S.C.A. – 7th Circuit
RECEIVED
APR 15 2024

    PLEASE TAKE NOTICE THAT on April 15, 2024, Pro se Plaintiff-Appellant filed PLAINTIFF-APPELLANT RESPONSE TO DEFENDANT-APPELLEES MOTION TO DISMISS APPEAL OF CASE NO. 20 C 6316 AND FOR SUMMARY AFFIRMANCE OR TO RESET BRIEFING SCHEDULE FOR CASE NO. 22 C 3861

**CERTIFICATE OF SERVICE**

    I, Fred L. Nance Jr. pro se plaintiff, certify I served the foregoing Notice of Filing by causing a true and correct copy of the same to be hand delivered to Attorney Kurt N. Lindland, at 219 South Dearborn Street, 5th floor, Chicago, Illinois 60604.

Respectfully submitted,
/s/Fred L. Nance Jr., Pro se plaintiff
17239 Evans Avenue
South Holland, Illinois 60473-3436
708-921-1395
frednance@clickservices.org